**THOMPSON, BREEDING, DUNN, CRESWELL & SPARKS, a partnership, Plaintiff–Appellant,**

v.

**Lynn C. BOWLIN, Defendant–Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 12, 1987.

Application to Appeal Denied by Supreme Court Aug. 15, 1988.

William B. Acree, Jr., Elam, Glasgow, Tanner & Acree, Union City, for plaintiff-appellant.

Randall Burcham, Burcham & Fox, Union City, for defendant-appellee.

FARMER, Judge.

This is an action for breach of an employment contract.

Thompson, Breeding, Dunn, Creswell & Sparks (Partnership), a partnership of certified public accountants, brought suit against its former employee, Lynn Bowlin, to enforce the terms of an employment contract (Contract) signed by the parties when Bowlin became employed by the Partnership. The pertinent provisions of the Contract are as follows:

5. The employee hereby agrees that for a period of three years after the termination of his employment by the company, either voluntary or involuntary, he will not on either his own account or as a member of a firm, or on behalf of another employer, or otherwise, directly or indirectly, work as a tax consultant, ac-

countant, auditor, or bookkeeper for or solicit such business from, any client of the company.

. . . .

8. In the event that the employee violates the terms of any part of this agreement[,] the company shall have the right to apply to any court or [sic] competent jurisdiction for an injunction restraining the employee from further violation. The employee further agrees that he will pay on demand to the company as liquidated damages for any violation of paragraph (5) of this agreement a sum equivalent to the fees charged by the company in the preceding twelve months to the client or clients for whom any work was done or solicited.

Bowlin worked as an accountant for the Partnership from June 1981 until December 1985 when he resigned after refusing a second offer to become a partner. Thereafter he opened his own accounting office in Union City. In January 1986, the Partnership notified Bowlin twice of its intention to enforce the Contract. Bowlin responded that, based on legal advice, he felt that the Contract was "overly restrictive, and if enforceable at all, is so only to a diminished degree." However, he further stated he had no intention of soliciting the Partnership's clients.

In May the Partnership filed a complaint alleging that Bowlin breached the Contract by not only performing accounting services for its clients, but also actively soliciting their business. It is undisputed that the defendant performed services for approximately twenty clients that the Partnership had serviced in 1985. The Partnership initially sought injunctive relief against Bowlin, as well as damages based on paragraph 8 of the Contract.

Bowlin answered by merely denying these charges. At trial, however, the Chancellor permitted him to introduce evidence, over the Partnership's objections, which constituted affirmative defenses not previously pled. Apparently the most persuasive of these was the fact that Bowlin obtained acknowledgements or releases from the Partnership's clients before he performed any work for them.

As a result of this testimony, the lack of any territorial limitation in the Contract, and his finding that the word "client" was ambiguous, the Chancellor concluded that paragraph 5 of the Contract was unreasonable and placed an impossible burden on Bowlin to determine what clients he could accept. The Chancellor therefore found the Contract to be unenforceable and dismissed the Partnership's suit.

The Partnership has abandoned its claim for injunctive relief and is now only seeking damages. It has raised two issues on appeal. The first issue concerns whether the Chancellor erred in allowing Bowlin to introduce evidence relative to affirmative defenses not raised in his pleadings.

"An affirmative defense is one that wholly or partly avoids the cause of action asserted by the preceding pleading by new allegations that admit part or all of the cause of action, but avoids liability because of a legally sufficient excuse, justification, or other matter negating the alleged breach or wrong." Pivnick, Tenn. Circuit Court Prac. (2nd Ed.), § 12–4. A party relying upon matter that constitutes such an avoidance or affirmative defense must set forth the defense in short, plain terms in its pleading. T.R.C.P. 8.03 and Committee Comments. If an affirmative defense is not set forth in an original pleading, it is waived. T.R.C.P. 12.08. *See e.g., Smartt v. Fleming*, 481 S.W.2d 774 (Tenn.App. 1972).

■ In his answer to the complaint, Bowlin failed to raise any affirmative defenses; therefore, he waived them. As a result, testimony permitted over objections by the Partnership that went to the issues of these affirmative defenses was admitted in error. Notwithstanding the error of allowing evidence of the acknowledgements or releases obtained from the Partnership's clients, this Court would emphasize that a disinterested third party cannot sign an acknowledgement and thereby release a party to a contract from his contractual obligations.

The second issue on appeal is whether the Chancellor erred in finding that paragraph 5 of the Contract was unreasonable and placed an impossible burden on Bowlin. "Agreements in restraint of trade, such as covenants restricting competition, are not invalid per se. Although disfavored by law, such agreements are valid and will be enforced, provided they are deemed reasonable under the particular circumstances." *Allright Auto Parks, Inc. v. Berry,* 409 S.W.2d 361, 363 (Tenn.1966). The Tennessee Supreme Court in *Central Adjustment Bureau, Inc. v. Ingram,* 678 S.W.2d 28 (Tenn.1984), adopted a "rule of reasonableness" to be used when construing covenants not to compete.

This rule provides that unless the circumstances indicate bad faith on the part of the employer, a court will enforce covenants not to compete to the extent ... necessary to protect the employer's interest "without imposing undue hardship on the employee when the public interest is not adversely affected." (citation omitted)

*Id.* at 37. Therefore, in construing the reasonableness of the covenant, we must examine the interests of the employer, the employee and the public.

■ Our review of this record does not indicate that the Partnership acted in bad faith in requiring Bowlin to sign this Contract. On the contrary, it required all of its employees and Partners to sign similar agreements. The Partnership was entitled to contract with its employees to protect a legitimate business interest.

Bowlin argued that the ambiguous meaning of the word "client" and the lack of territorial limitation in the Contract placed an impossible burden on him that should render the Contract unenforceable.

It is the duty of the court in the construction of contracts to ascertain the intention of the contracting parties, understand what they meant by the contract, and give effect to such understanding and meaning. All other rules of construction are only aids or helps in establishing the intention of the parties

and their mutual understanding of the meaning of their contract.

The motives which induced the contract have a definite bearing upon the intention of the parties. The object and purpose to be effected furnish valuable aids in ascertaining such intention. (citations omitted)

*Commerce Street Co. v. Goodyear Tire & Rubber Co.,* 215 S.W.2d 4, 10 (Tenn.App. 1948).

It is apparent that by requiring all of its employees and Partners to sign contracts containing a covenant not to compete, the Partnership was endeavoring to protect its business. This was understood and agreed to by Bowlin before he signed the Contract.

Although the term "clients" in the Contract was not specifically limited to present clients, we find that this is the only defendable client interest the Partnership had. "It has long been settled that *present* customers are a protectable interest of an employer." (emphasis added) *Seach v. Richards, Dieterle & Co.,* 439 N.E.2d 208, 213 (Ind.App.1982). On the other hand, interpreting "clients" to encompass past or future clients would be too broad and vague to be enforceable. *Id.*

While there is some ambiguity ... [it] may be clarified and said language given a fair and reasonable construction, when read in the light of the entire contract and the facts and circumstances surrounding the parties at the time the said contract was entered into, so as to ... preserve the validity of the contract. It is the duty of the courts to construe written contracts, if their meaning be in doubt, so as to give them effect rather than destroy them. (citations omitted) *Scott v. McReynolds,* 255 S.W.2d 401, 405 (Tenn.App.1952).

The covenant did not contain a territorial limitation. However, instead of being fatal, *cf Fuller v. Kolb,* 238 Ga. 602, 234 S.E.2d 517 (1977), this omission leaves Bowlin great freedom to practice his profession in the same area as the Partnership. Rather than being limited by geographic boundaries, he is only prohibited from soliciting the business of and working for a specific

group of persons, the Partnership's clients, for a period of three years after his termination of employment. Bowlin knew who these clients were because he testified that he had each one sign an acknowledgement. "[A]s the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases." *Seach* at 213. The covenant therefore is not unreasonable, nor does it place an impossible burden on Bowlin.

Covenants that restrict competition are enforceable if reasonable in the circumstances. We find this restraint to be reasonable commensurate with the goal of protecting a legitimate interest of the Partnership. Therefore its enforcement is not against public policy.

We find that, in accordance with Paragraph 8 of the Contract, the plaintiff is entitled to recover from the defendant a sum equivalent to the fees charged by plaintiff in the preceding twelve months to the clients for whom any work was done or solicited by defendant. The total charges made by the plaintiff to those clients for the preceding twelve months was $33,706.25. Of that amount the sum of $16,188.00 was paid by the City of Newbern, which the plaintiff concedes was for work paid over a period of time and was not the usual and ordinary work performed by the plaintiff for the City. Deducting the billing to the City of Newbern from the total billing leaves a balance of $17,518.25. We find that plaintiff is entitled to recover from defendant the sum of $17,518.25 and enter judgment for the plaintiff accordingly.

In summary, we find that it was error to allow evidence relative to the issues of affirmative defenses to be introduced, over the objection of the appellant, for the first time at trial; and that the non-competition covenant in the employment contract is valid and enforceable and that plaintiff recover judgment from the defendant as set forth hereinabove.

This cause is remanded for any further proceedings consistent with this Opinion with the costs of appeal and in the trial court to be taxed to the defendant, Lynn C. Bowlin.

TOMLIN, P.J., W.S., and CRAWFORD, J., concur.