# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**March 8, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

ANGIE BROOKS,                             )
                                          )
    Plaintiff/Appellant,          )
                                          )
VS.                                       )
                                          )
KIMBERLY J. QUAM DAVIS and  )      Montgomery Circuit
GAYLE SCHAAL,                      )
                                          )
    Defendants/Appellees.         )

AND

                        Appeal No.
                        01-A-01-9509-CV-00402

ERICA BROOKS, a minor b/n/f    )
ANGIE BROOKS, mother and       )
natural guardian,                         )
                                          )
                      )      Montgomery Circuit
    Plaintiff/Appellant,          )
                                          )
VS.                                       )
                                          )
KIMBERLY J. QUAM DAVIS and  )
AMY SCHAAL,                        )
                                          )
    Defendants/Appellees.         )

## CONCURRING OPINION

Two persons injured in a one-car accident sued the driver of the car in which they were riding. After obtaining an essentially worthless judgment against the unknown driver of another car, the passengers perfected this appeal to take issue with the trial court's decision to permit their driver to rely on a "phantom automobile" defense even though she had not included this defense in her answer. The majority has determined that the trial court properly permitted the driver to assert this defense and to amend her pleadings to conform to the proof. While I concur with the majority's decision under the circumstances of this case, I have

prepared this separate opinion to avoid leaving a mistaken impression that the driver's answer complied with Tenn. R. Civ. P. 8.03. It did not; however, the error does not undermine the jury's verdict in this case.

## I.

Angie Brooks became friends with Kimberly Quam (now Davis) and Amy Schaal when she and her husband moved to the Clarksville area in 1989. On the evening of February 2, 1991, Ms. Schaal, accompanied by Ms. Davis, drove to Ms. Brooks' house and invited Ms. Brooks to drive with Ms. Schaal to work and then to accompany Ms. Davis to a local shopping mall. Ms. Brooks accepted the invitation, and she and her two small children joined her two friends in Ms. Schaal's car.

Ms. Davis took over the driving responsibilities after they dropped off Ms. Schaal at the fast food restaurant where she worked. After spending some time at the mall, Ms. Davis and Ms. Brooks set out in search of the home of a man Ms. Davis had recently met. Ms. Brooks joined Ms. Davis in the front seat and held her infant son on her lap, leaving Erica, her two-year-old daughter, in the back seat by herself. While returning to pick up Ms. Schaal, Ms. Davis drove the car off the road and into a dirt embankment. Ms. Brooks did not see what happened because she was tending to Erica who had gotten "a little rowdy" in the back seat.

On January 29, 1992, Ms. Brooks filed suit against Ms. Davis and Ms. Schaal's mother[1] in the Circuit Court for Montgomery County. She later filed a separate suit on behalf of her daughter against Ms. Davis and Ms. Schaal. Ms. Brooks served copies of both complaints against Allstate Insurance Company, her uninsured motorist carrier.

Ms. Davis answered the complaints in September 1992. She admitted that "she was driving the vehicle at the time and place mentioned, that she suddenly

---

[1]Ms. Brooks believed erroneously that Ms. Schaal's mother was the owner of the car.

lost control of the vehicle, ran off the road and struck an embankment," but she denied that she was negligent in any way. During her deposition on December 17, 1992, Ms. Davis explained that she lost control of the car because "[t]here was another car over in my lane. And I went over to move, you know, to miss it and went off in the ditch."

The record provides little insight into the events occurring between December 1992 and October 1994 when this case was tried. The trial court granted summary judgments dismissing the claims against both Ms. Schaal and her mother and consolidated Ms. Brooks' and her daughter's complaints for trial. Accordingly, the only claims tried in October 1994 were the negligence claims against Ms. Davis. Allstate did not participate in the trial.

Ms. Davis' assertion that she lost control of the car while attempting to avoid an oncoming car was a central issue at trial from the very beginning. Even before the proof began, Ms. Davis' lawyer informed the jury that Ms. Davis would testify that she lost control of the car while attempting to avert a collision with another car. During the first day of trial, Ms. Brooks' witnesses were examined and cross-examined about the other car and Ms. Davis' statements about it. At the end of the first day of trial, Ms. Davis' lawyer informed the trial court that his client would testify the following day about the other car and that he intended to move to conform the pleadings to the proof in accordance with Tenn. R. Civ. P. 15.02 following her testimony.

On the morning of the second day of trial, Ms. Brooks' lawyer objected to permitting Ms. Davis to testify about the other car because she had waived her right to assert this defense by failing to include it in her answer. The trial court, concluding that this testimony was not a surprise because it was consistent with Ms. Davis' December 1992 deposition, ruled that Ms. Davis would be permitted to testify about the other car and that her lawyer would be permitted to amend the pleadings to conform to this proof. Ms. Brooks' lawyer did not request a continuance in order to better prepare to cross-examine Ms. Davis or to obtain rebuttal proof.

Ms. Davis was examined and cross-examined about her efforts to avoid the oncoming car and whether she had mentioned the other car to Ms. Brooks, the investigating officer, or the lawyer who prepared her answer. At the conclusion of Ms. Davis' proof, the trial court granted her motion to amend her answer to conform her pleadings to her testimony. The trial court also permitted Ms. Brooks' lawyer to choose whether the case should be submitted to the jury on Ms. Davis' negligence alone or whether the jury should be instructed to apportion fault between Ms. Davis and the unknown driver of the other car. Ms. Brooks' lawyer requested that the jury be instructed to apportion fault between Ms. Davis and the unknown driver of the other car.

The trial court instructed the jury that it should determine whether Ms. Davis was at fault and that it should also apportion the fault between Ms. Davis and the unknown driver of the other car. The jury returned with a verdict that no fault was chargeable to Ms. Davis and that 100% of the fault was chargeable to the "Alleged Unknown Other Driver." The jurors also assessed Ms. Brooks' damages at $25,000 and Erica Brooks' damages at $10,000. Thereafter, the trial court entered a judgment against the unknown defendant.[2]

## II.

The linchpin of Ms. Brooks' argument is that Ms. Davis' testimony that she was reacting to a sudden emergency when she ran off the road was an affirmative defense. She insists that Tenn. R. Civ. P. 8.03 required Ms. Davis to include this defense in her answer and that her failure to plead this defense specifically should have prevented her from relying on it at trial. We must, accordingly, construe Tenn. R. Civ. P. 8.03 and Tenn. R. Civ. P. 15.02.

---

[2]The trial court initially entered the judgment against the unknown defendant and Allstate Insurance Company. Allstate moved to alter or amend the judgment, pointing out that Ms. Brooks had not complied with the service requirements of Tenn. Code Ann. § 56-7-1206(b) (1994) or the proof requirements in Tenn. Code Ann. § 56-7-1201(e)(1) (1994). The trial court granted Allstate's motion and entered an amended judgment against only the unknown defendant. Ms. Brooks has not taken issue on this appeal with Allstate's removal from the amended judgment.

**A.**

Prior to July 1993, Tenn. R. Civ. P. 8.03 provided, in part, that:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

Recognizing the mandatory nature of Tenn. R. Civ. P. 8.03, the courts have consistently held that affirmative defenses that are not properly raised are waived. *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin,* 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987); *Barrton Scientific, Inc. v. Moss,* 542 S.W.2d 375, 379 (Tenn. Ct. App. 1975); Tenn. R. Civ. P. 12.08.

The defenses specifically listed in Tenn. R. Civ. P. 8.03 are not the only defenses to which the rule applies. The rule also applies to "any other matter constituting an avoidance or affirmative defense." Even though these terms are not defined, their meaning can be gleaned from the fact that Tenn. R. Civ. P. 8.03 is a lineal descendant of the common-law pleadings in confession and avoidance. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1270 (2d ed. 1990). This court has thus defined an affirmative defense as

> one that wholly or partly avoids the cause of action asserted by the preceding pleading by new allegations that admit part or all of the cause of action, but avoids liability because of a legally sufficient excuse, justification, or other matter negating the alleged breach or wrong.

*Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin,* 765 S.W.2d at 744 (quoting Lawrence A. Pivnick, *Tennessee Circuit Court Practice* §12-4 (2d ed. 1986)).

The difference between a general defense which is not required to be specifically pled and an affirmative defense is that a general defense negates an element of the plaintiff's prima facie case, while an affirmative defense excuses the defendant's conduct even if the plaintiff is able to establish a prima facie case. *Donohoe v. American Isuzu Motors, Inc.,* 155 F.R.D. 515, 518 (M.D. Pa. 1994). Thus, any defense that does not tend to contradict the opposing party's prima facie case as determined by the applicable substantive law should be pleaded and is not put in issue by a general denial made pursuant to Tenn. R. Civ. P. 8.02. *See* 2A James W. Moore, *Moore's Federal Practice* ¶ 8.27[3] (2d ed. 1995).

Defenses predicated on the doctrines of sudden emergency or unavoidable accident are not affirmative defenses because they negate an essential element of the plaintiff's prima facie case. These defenses, in effect, assert that the defendant was not negligent because of the existence of an emergency. *Moody v. Gulf Ref. Co.,* 142 Tenn. 280, 293, 218 S.W. 817, 820 (1920); *Cawthon v. Mayo,* 45 Tenn. App. 610, 646, 325 S.W.2d 629, 645 (1958). Accordingly, this court has noted that defenses of "sudden emergency" and "unavoidable accident" are not affirmative defenses required to be pled specifically under Tenn. R. Civ. P. 8.03. *Whitaker v. Harmon*, 879 S.W.2d 865, 870 (Tenn. Ct. App. 1994); *Braden v. Varnell*, 871 S.W.2d 690, 692-93 (Tenn. Ct. App. 1991).

Ms. Davis' answer and deposition testimony demonstrate that she was not claiming that the unknown driver of the oncoming car was contributorily negligent. She was simply denying that she had acted negligently when she ran off the road because she was acting like any reasonable person would act when confronted with a similar emergency. Accordingly, she was making a general defense as opposed to a special defense, and her answer's general denial of negligence in accordance with Tenn. R. Civ. P. 8.02 was sufficient.

**B.**

-6-

Even if Ms. Davis was not required to specifically plead her defense predicated on the unknown driver when she filed her answer, Ms. Brooks argues that the July 1993 amendment to Tenn. R. Civ. P. 8.03 required her to amend her answer to include this defense. While I agree that Ms. Davis should have filed an amended answer in this case, I do not agree that her failure to do so under the facts of this case should have prevented her from testifying about the unknown driver of the oncoming car.

The Tennessee Supreme Court replaced the doctrine of contributory negligence with the doctrine of comparative fault in *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn. 1992). Accordingly, an amendment to Tenn. R. Civ. P. 8.03 that took effect on July 1, 1993, replaced "contributory negligence" with "comparative fault (including the identity or description of any other alleged tortfeasors)." This amendment requires defendants intending to assert that the plaintiff's injuries were caused, in whole or in part, by another person to include this defense in their answer and to identify the other person. Including this defense in the answer is an essential ingredient of the new comparative fault scheme because it is the only way to trigger the plaintiff's limited opportunity to assert claims directly against these other parties under Tenn. Code Ann. § 20-1-119 (1994).

Ms. Brooks, arguing for a strict interpretation of Tenn. R. Civ. P. 8.03, asserts that the amended version of the rule required Ms. Davis to file an amended answer asserting that the conduct of the unknown driver caused her to swerve off the road. The majority recognizes the present version of Tenn. R. Civ. P. 8.03 requires defendants to include comparative fault defenses in their answers but has declined to apply it in this case apparently because the amendment to the rule did not take effect until July 1, 1993, nine months after Ms. Davis filed her answer. This reasoning is unsound.

Both *McIntyre v. Balentine* and the amendment to Tenn. R. Civ. P. 8.03 applied to all cases awaiting trial in July 1993. Thus, as things stood at that time, Ms. Davis' lawyer should have filed an amended answer stating that the conduct of the unknown driver of the oncoming car caused or contributed to the injuries sustained by Ms. Brooks and her daughter. Ms. Davis did not amend her answer until trial when she moved to conform her pleadings to the proof. Thus, the question before us is whether the trial court's decisions to permit this testimony was improperly prejudicial to Ms. Brooks and her daughter.

Even though the amended version Tenn. R. Civ. P. 8.03 applied to this case, Ms. Davis' failure to file an amended answer did not prevent her from testifying about the other car. Tenn. R. Civ. P. 8.03 should not be interpreted as formalistically as suggested by Ms. Brooks. The Tennessee Supreme Court has pointed out that the "failure to [specifically plead an affirmative defense] does not result in a waiver of the defense if the opposing party is given fair notice of the defense and an opportunity to rebut it." *Sands v. State,* 903 S.W.2d 297, 299 (Tenn. 1995) (statute of limitations defense). The fair notice in *Sands v. State* came from the pleadings themselves. Although Ms. Davis' answer simply denied that she was negligent, her testimony at the December 1992 deposition gave fair notice of her assertions about the other car. Accordingly, the trial court did not err by permitting Ms. Davis to testify about the other car at the trial.

## C.

If the trial court properly permitted Ms. Davis to testify about the other car, it necessarily follows that the trial court properly granted her Tenn. R. Civ. P. 15.02 motion to amend her answer to conform to the evidence. Trial courts have broad discretion over amendments to the pleadings. *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 22 (Tenn. Ct. App. 1993); *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979). Tenn. R. Civ. P. 15.01 states that "leave [to amend a pleading] shall be freely given when justice so requires." Accordingly, the trial courts should permit parties to amend their pleadings in the absence of undue delay, bad faith, or prejudice to the nonmoving

party.  *Gardiner v. Word,* 731 S.W.2d 889, 891-92 (Tenn. 1987); *Kemmons Wilson, Inc. v. Allied Bank,* 836 S.W.2d 104, 107 (Tenn. Ct. App. 1992).  The mere possibility that the defense included in the amended answer might succeed is not the type of prejudice that requires the denial of the motion to amend.  *Guarantor Partners v. Huff,* 830 S.W.2d 73, 77 (Tenn. Ct. App. 1992); *Garthright v. First Tennessee Bank,* 728 S.W.2d 7, 9 (Tenn. Ct. App. 1986).

Ms. Davis testified in her December 1992 deposition that she lost control of the car on February 2, 1991 while attempting to avoid a head-on collision with an oncoming car that had crossed over the center line into her lane.  Thus, Ms. Brooks' lawyer had known about this testimony for twenty-two months by the time of the October 1994 trial.  His protestations of surprise and prejudice at trial accordingly do not ring true.

This record contains no indication of bad faith on the part of Ms. Davis or undue prejudice to Ms. Brooks.  Accordingly, the only remaining question is whether Ms. Davis delayed unduly by moving to amend her answer at trial to conform to the proof.  If this case had arisen after the effective date of Tenn. Code Ann. § 20-1-119, I would hold that she waited too long.  In this transitional case, however, I would find that Ms. Davis did not wait too long to amend her answer for three reasons.  First, the amendment to Tenn. R. Civ. P. 8.03 created some ambiguity about the status of Ms. Davis' defense.  Second, Ms. Brooks had known about the defense since December 1992 and thus had ample time to prepare her case.  Third, Ms. Brooks would not have been entitled to assert a claim against the unknown driver because the statute of limitations on this claim had already expired when Tenn. Code Ann. § 20-1-119 became effective.[3]

**III.**

---

[3]*Owens v. Truckstops of America,* App. No. 01-S-01-9408-CV-00077, slip op. at 13-14, 21 T.A.M. 6-1 (Tenn. Jan. 29, 1996) (Opinion designated "For Publication").

In summary, I have concluded that Ms. Davis did not waive her right to assert a defense based on the conduct of the unknown driver because Ms. Brooks had fair notice of the defense and an opportunity to rebut it. I have also concluded that Ms. Davis did not delay unduly when she amended her answer at trial to conform to her testimony about the unknown driver. I would affirm the trial court on these grounds.

_____
WILLIAM C. KOCH, JR., JUDGE