IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 19, 2025 Session

## TIMOTHY WILLIAMS v. LEE ANN SIKES

**Appeal from the Chancery Court for Dyer County**
**No. 24-CV-95      Michael Mansfield, Chancellor**

————————————————————

**No. W2025-00471-COA-R3-CV**

————————————————————

Appellant appeals the trial court's judgment in favor of Appellee for work performed pursuant to an oral contract between the parties. Discerning no error, we affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Marianna Williams, Dyersburg, Tennessee, for the appellant, Lee Ann Sikes.[1]

Thomas H. Strawn, Dyersburg, Tennessee, for the appellee, Timothy Williams.

### MEMORANDUM OPINION[2]

### I. Background

In 2023, Bobby Sikes, a farmer who owned land on Lewis Creek in Dyer County, Tennessee, contacted Timothy Williams, who owned a company specializing in dirt moving and excavation, concerning a restoration project on Mr. Sikes' property as it was

---

[1] Ms. Williams was unable to appear for oral arguments, and Matthew Willis argued in her absence.

[2] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

experiencing severe erosion problems. Mr. Williams suggested that Mr. Sikes contact the National Resource Conservation Service (the "NRCS") for assistance. Briefly, the NRCS' mission is to "deliver conservation solutions so agricultural producers can protect natural resources and feed a growing world." *About NRCS*, NAT'L RESOURCES CONSERVATION SERV., https://www.nrcs.usda.gov/about (last visited May 1, 2026). The NRCS provides technical and financial assistance to eligible landowners and agricultural producers "to help manage natural resources in a sustainable manner." *Getting Assistance*, NAT'L RESOURCES CONSERVATION SERV., https://www.nrcs.usda.gov/getting-assistance (last visited May 1, 2026). The NRCS inspected Mr. Sikes' property and created a restoration plan for it, which was estimated to cost $92,000.00. After receiving this plan, Mr. Sikes again contacted Mr. Williams to implement it. The two agreed that Mr. Williams would follow the NRCS' restoration plan, but they did not enter into a written contract, and Mr. Williams did not provide a cost estimate for the work to be completed. Mr. Williams began work on the property in June 2023.

On September 6, 2023, Mr. Williams sent an invoice to Mr. Sikes for $64,278.00. In mid-September, Mr. Williams ceased working on the property, leaving the restoration project incomplete. On October 6, 2023, Mr. Williams sent Mr. Sikes another invoice for $24,414.00. On October 24, 2023, the NRCS reviewed the work that had been completed and valued it at $40,910.27. The NRCS released these funds to Mr. Sikes to pay for same. On November 6, 2023, Mr. Sikes' wife, Lee Ann Sikes, wrote a check to "Williams Dirt Work" for $40,910.27. On December 6, 2023, Mr. Williams sent a final invoice to Mr. Sikes for $61,573.73. The payment of $40,910.27 was reflected in the invoice. The parties dispute whether Mr. and Mrs. Sikes attempted to compensate Mr. Williams further. Regardless, Mr. and Mrs. Sikes paid Mr. Williams $40,910.27 in total.

In the summer of 2024, Mr. Sikes contacted Zach Bennett of Bennett's Excavation & Dozer Service, LLC to review the incomplete restoration project. Mr. Bennett met with representatives of the NRCS to review the plan and began work to complete the project. On completion, the NRCS reviewed Mr. Bennett's work and approved it. Mr. Bennett billed Mr. Sikes for $17,800.00, and the NRCS reimbursed Mr. Sikes for this amount. The NRCS did not reimburse Mr. Sikes for Mr. Williams' work beyond the previous payment of $40,910.27.

On February 28, 2024, Appellee Timothy Williams, d/b/a Williams Precision Earth Moving, LLC ("Precision Earth") filed a complaint against Mr. and Mrs. Sikes in the Chancery Court of Dyer County (the "trial court"). Therein, Mr. Williams alleged that he had performed work for Mr. and Mrs. Sikes totaling $102,484.00 but was paid only $40,910.27, leaving a balance owed of $61,574.00. Attached to the complaint were the three invoices, discussed above. On March 14, 2024, Mr. and Mrs. Sikes filed an answer and counter complaint. In the answer, they alleged as an affirmative defense that they advised Mr. Williams "that the project was to be performed . . . in compliance with a Conservation Program Contract between [the NRCS] and [Mr. and Mrs. Sikes]." In the

counter complaint, they alleged that Precision Earth recorded a lien against their property for $61,573.73 related to the restoration project. Mr. and Mrs. Sikes alleged that Precision Earth "grossly exaggerated" the amount of the lien and asked that it be dissolved. They also alleged that they attempted to pay Mr. Williams $5,000.00 for additional work, but he refused payment.

Trial in this matter occurred on February 3, 2025. Nine witnesses testified, including Mr. Williams, Mr. and Mrs. Sikes, and Mr. Bennett. Eleven exhibits were entered into evidence. In lieu of oral closing arguments, the parties agreed to submit written closing arguments to the trial court by a date certain.

On March 17, 2025, the trial court entered the final judgment. As an initial matter, the trial court found that Mr. Sikes' property was experiencing severe erosion problems prior to 2023, and that "[Mr.] Williams suggested to [Mr.] Sikes that the NRCS, a government agency tasked with preventing erosion, might lay out a plan for remedying the erosion on [Mr. Sikes'] farm and also might pay to have that work completed." The trial court further found that Mr. Williams, on behalf of Precision Earth, entered into an oral contract with Mr. Sikes to perform the work set forth in the NRCS plan for $92,000.00. Additionally, the trial court found that, despite Mr. Sikes' belief that the NRCS would reimburse him for the work Mr. Williams performed, the contract was solely between Mr. Sikes and Mr. Williams, on behalf of Precision Earth, and that the NRCS was not a party to the contract. Additionally, the trial court found that: (1) Mr. Williams performed work on Mr. and Mrs. Sikes' property from June through September 2023; (2) Mr. Williams invoiced Mr. Sikes for a total of $102,484.00; and (3) Mr. and Mrs. Sikes paid Mr. Williams $40,910.27 total. Also, the trial court found that Mr. and Mrs. Sikes hired Mr. Bennett to complete the work remaining on the project, which cost a total of $17,800.00. Lastly, the trial court found that Mr. Williams performed additional work on Mr. and Mrs. Sikes' property that was not in the NRCS plan, costing $5,000.00, for which they offered to pay Mr. Williams, but he refused. Based on the foregoing, the trial court concluded that Mr. Sikes owed Mr. Williams $38,289.73 and entered a judgment in Mr. Williams' favor for this amount. The trial court also ordered that post-judgment interest would accrue at the statutory rate until the judgment was satisfied. Because the trial court found there was no evidence that Mrs. Sikes entered into a contract with Mr. Williams, his claims against her were dismissed with prejudice.

Mr. Sikes filed a timely notice of appeal. On August 10, 2025, Mr. Sikes died. By order of October 6, 2025, this Court substituted Mrs. Sikes as Appellant in this appeal.

## II. Issues

Mrs. Sikes lists three issues for our review, as stated in her brief:

1. Whether the [trial court] erred in relying upon insufficient evidence to support its

judgment that [Mr. Williams] completed the work in a workmanlike manner and should be awarded compensation for the said work pursuant to an oral contract between the parties.

2. Whether the [trial court] erred in finding the testimony of [Mr.] Williams and his witnesses credible regarding the scope of the work agreed upon, the amount of the charges for said work and whether the work was completed.

3. Whether the [trial court] erred in calculating the amount of the judgment against [Mr.] Sikes.

Mr. Williams raises the following additional issues, as stated in his brief:

1. Whether the [this Court] should grant post judgment interest in an amount set up by statute.

2. Whether the [this Court] should grant attorney fees incurred by [Mr. Williams] in the appeal.

### III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008).

### IV. Analysis

### A. Credibility

We begin by addressing Mrs. Sikes' issue concerning Mr. Williams' credibility as well as the credibility of his other witnesses. In *Wells v. Tennessee Board of Regents*, 9 S.W.3d 779 (Tenn. 1999), the Tennessee Supreme Court explained that

trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29

- 4 -

(Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978).

*Wells*, 9 S.W.3d at 783. Further, this Court is "required to defer to the trial court's credibility findings, including those that are *implicit* in its holdings." *Williams v. City of Burns*, 465 S.W.3d 96, 120 (Tenn. 2015) (emphasis added); *see also Street v. Street*, No. E2016-00531-COA-R3-CV, 2017 WL 1177034, at *7 (Tenn. Ct. App. Mar. 29, 2017). Although the trial court did not explicitly make a credibility finding as to Mr. Williams' testimony or the testimony of his witnesses, it is clear from the trial court's ruling that it found such testimony credible.

As an initial matter, Mrs. Sikes' appellate brief fails to discuss any credibility issues concerning Mr. Williams' witnesses. *See* Tenn. R. App. P. 27(a)(7)(A) (requiring an appellant's brief to contain an argument of each issue presented with citations to authorities and references to the record). Accordingly, we do not address that issue. *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) ("An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)."). Regarding Mr. Williams' credibility, Mrs. Sikes argues that certain inconsistencies between what was alleged in the complaint and what Mr. Williams testified to were "significant." We disagree. Mrs. Sikes first takes issue with the status of Mr. Williams' contractor's license. In the complaint, filed February 2024, it was alleged that Mr. Williams, d/b/a Precision Earth held a contractor's license; in his testimony, Mr. Williams explained that his contractor's license expired in July 2023, but that he had one year to renew it. Mrs. Sikes' next issue concerns the time frame during which Mr. Williams worked on the restoration project. Although the complaint alleged that Mr. Williams worked from late June through mid-November 2023, Mr. Williams testified that he began working part-time in June and full-time in early July before leaving the job mid-September 2023. Similarly, Mrs. Sikes takes issue with Mr. Williams' creation of invoices after he left the job as well as the discrepancy in the amount of the first two invoices and the final invoice. In his testimony, Mr. Williams explained that he did not "include every detail" in the first two invoices because he was "just trying to put the hours [down]," and that the first two invoices were at a "reduced rate." He further testified that he did not create a final bill with the first two invoices because he "was still under the impression that [he] would go back and finish the job" after he was paid. However, once it became clear that Mr. Sikes was not going to pay Mr. Williams, he calculated everything from the job and sent the final invoice. The foregoing slight inconsistencies, if any, fail to rise to the clear and convincing evidence standard required to reevaluate the trial court's implicit finding that Mr. Williams' testimony was credible. Accordingly, as discussed *infra*, we defer to the trial court's explicit and implicit findings concerning Mr. Williams' testimony.

- 5 -

## B. Evidence

We next turn to Mrs. Sikes' issue alleging that there was insufficient evidence to support the judgment in favor of Mr. Williams. Although not phrased as such and somewhat difficult to follow, we deduce that Mrs. Sikes' argument is that Mr. Williams should not be paid for the work he completed for three reasons: (1) Mr. Williams cannot recover for work that did not pass the NRCS inspection; (2) Mr. Williams can recover only for "actual documented expenses;" and (3) Mr. Williams breached the duty to perform the work in a workmanlike manner.

Concerning the first argument, the parties' testimonies differ as to whether Mr. Williams' payment for the work he performed was conditioned on the NRCS' approval of that work. Given that the trial court found that Mr. Sikes owed Mr. Williams for work performed without the NRCS' approval, it impliedly credited Mr. Williams' testimony on this point, and we defer to this finding by the trial court. *See Williams*, 465 S.W.3d at 120. Briefly, the second argument is predicated on the alleged expiration of Mr. Williams' contractor's license.[3] Tennessee requires that any person or corporation engaged in contracting in this state be licensed. Tenn. Code Ann. § 62-6-103(a)(1). Under Tennessee Code Annotated section 62-6-102(4)(A)(i), a "contractor" includes any person or entity that undertakes a grading or excavation project for which the total cost exceeds $25,000.00. Tenn. Code Ann. § 62-6-102(4)(A)(i). Any contractor who is required to be licensed, but violates said rule, "shall not be permitted to recover any damages in any court other than actual documented expenses that can be shown by clear and convincing proof." Tenn. Code Ann. § 62-6-103(b). Mrs. Sikes argues that: (1) Mr. Williams' contractor's license expired; and (2) he failed to produce "actual documented records" that would allow him to recover damages as an unlicensed contractor. Concerning the third argument, Mrs. Sikes argues that Mr. Williams breached his duty to complete the job in a workmanlike manner because some of his work did not pass inspection from the NRCS and because there was evidence presented concerning an issue with one of the catch basins.

The Tennessee Supreme Court has explained that

"[a]n affirmative defense is one that wholly or partly avoids the cause of action asserted by the preceding pleading by new allegations that admit part or all of the cause of action, but avoids liability because of a legally sufficient excuse, justification, or other matter negating the alleged breach or wrong." *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987) (quoting Lawrence A. Pivnick, Tennessee Circuit

---

[3] As discussed above, Mr. Williams testified that his contractor's license expired in July 2023 and that he had one year to renew it. The record shows that Mr. Williams performed work for Mr. and Mrs. Sikes from July through September 2023, within this one-year time period.

Court Practice § 12: 4 (2nd Ed. 1986)); *see also* Tenn. R. Civ. P. 8.03.

*Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 157 (Tenn. 2017). Here, Mr. Williams' complaint alleged that he: (1) performed dirt work on Mr. and Mrs. Sikes' property; and (2) charged Mr. and Mrs. Sikes $102,484.00 for work performed but was paid only $40,910.00, leaving a balance due of $61,574.00. In the answer, Mr. and Mrs. Sikes admitted that Mr. Williams performed dirt work on their property and that he was paid $40,910.00. On appeal, Mrs. Sikes seeks to avoid liability for the remainder of Mr. Williams' work due to legally sufficient excuses, *i.e.,* reliance on Tennessee Code Annotated section 62-6-103(b) and alleging breach of the implied warranty to perform in a workmanlike manner. Accordingly, she raises two affirmative defenses to avoid paying Mr. Williams the remainder owed.

Notably, Mrs. Sikes failed to raise the foregoing affirmative defenses in her answer and/or counter complaint as required by Tennessee Rules of Civil Procedure Rule 8.03. Tenn. R. Civ. P. 8.03 ("In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . any other matter constituting an affirmative defense."). Although an issue not raised in a pleading may be tried by express or implied consent of the parties, *see* Tenn. R. Civ. P. 15.02, it does not appear that the foregoing issues were tried by consent. As an initial matter, the entirety of Mr. and Mrs. Sikes' opening argument at trial was the following:

> Your Honor, we believe the crux of the lawsuit is that Mr. Williams didn't bother to finish the project and wants to be paid. And, we have substantial evidence showing that he acknowledged that he didn't finish the project.

At oral argument, after questioning from this Court, Mrs. Sikes' counsel alleged that the issue concerning Mr. Williams' contractor's license was raised at trial. Although this issue could have a significant effect on this litigation, from our review of the record, it was not properly raised nor litigated in the trial court.[4] While Mr. and Mrs. Sikes' counsel questioned Mr. Williams concerning his contractor's license, the only testimony elicited consisted of eleven lines in which Mr. Williams admitted that his license expired in July 2023 but that he had a year in which to renew it. Further, it does not appear that Mr. Williams was even asked whether he exercised his right to renew the license. Any argument concerning the quality of Mr. Williams' work is also missing from the transcript. As noted above, the trial court allowed the parties to submit their closing arguments in written form after trial. While Mr. Williams' written closing argument appears in our record, to the extent Mr. and Mrs. Sikes submitted one, it is not in the record before this Court. We note that Mr. Williams' written closing argument addresses neither of the affirmative defenses discussed above.

---

[4] Mr. Williams' counsel argued that this issue was not raised at trial.

Generally, when an affirmative defense is not raised in an original pleading, it is waived. Tenn. R. Civ. P. 12.08; *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 735 (Tenn. 2013). As discussed above, the lack of a required license and the quality of Mr. Williams' workmanship constitute affirmative defenses, which should have been raised in the answer or counter complaint. Because they were not, we conclude that any issue regarding Mr. Williams' licensure or workmanship were not properly litigated in the trial court such that either could serve as a defense to Mr. Williams' claim for damages based on the contract amount. *See* Tenn. R. App. P. 36(a).

For completeness, we address the evidence that Mr. Williams presented to support his claim. First, Mr. Williams testified concerning the NRCS plan and the work he performed. As an initial matter, Mr. Williams' testimony showed that he followed the NRCS plan, but that he was also required to clean up the area before implementing that plan, and that the NRCS would not reimburse Mr. and Mrs. Sikes for the cleanup. Mr. Williams also testified that "maybe two or three times a week" he would discuss the project's progress with and "tell [Mr. Sikes] where [he was] at, where [he was] going." Mr. Williams further testified that, during the middle of the job, he discovered an issue that was previously unidentified and asked the NRCS representative if they would add the issue to the plan. The representative informed Mr. Williams that they were not going to provide any further reimbursement to Mr. and Mrs. Sikes other than what was listed in the original plan. Mr. Williams testified that he brought this matter to Mr. Sikes' attention and asked how he should proceed. Mr. Williams testified that Mr. Sikes "was fine with it," and that he always told Mr. Williams, "[Y]ou know what to do, go ahead." In addition to the foregoing work, Mr. Williams testified that Mr. Sikes asked him to build a landing strip for an airplane, which was outside the scope of the NRCS plan. In addition to Mr. Williams' testimony, Mr. Williams also offered the testimony of his employees on the project, Eddie Jones and Billy Rose. Mr. Jones testified that most of his dirt work was leveling the ground for the landing strip, and that he spent 170 hours on that part of the project. He also testified that the dirt he leveled for the landing strip was used to fill in the gullies and build the catch basins. Mr. Rose testified that he assisted with laying the pipe work. Lastly, Mr. Williams offered the testimony of Terry Reasons, who was designated an expert in the field of dirt moving and excavating. Mr. Reasons testified that it was common to charge for dirt work by the hour, as Mr. Williams did in his invoices to Mr. Sikes. Mr. Reasons' testimony also showed that, while on the higher side, Mr. Williams' hourly rates for operating a dozer, trackhoe, and dirt pan were within the industry standard. Given the foregoing, the record supports the trial court's conclusion that Mr. Williams presented sufficient evidence of the work performed and that he was owed compensation for same.

### C. Calculation of the Judgment

Despite phrasing her final issue as whether the trial court erred in calculating the amount of the judgment entered against Mr. Sikes, Mrs. Sikes does not address the actual

calculation, discussed further *infra*. Instead, she concludes this section of her brief by alleging that the trial court "erred in awarding [Mr.] Williams the balance due on the contract." Mrs. Sikes states that she "does not dispute the figure for the total value of the work to be performed under the NRCS plan." Rather, she "disputes whether [Mr.] Williams actually performed all of the work according to the specifications in the NRCS plan." It is unclear from her arguments whether Mrs. Sikes argues that Mr. Williams left the project incomplete or whether she argues that he failed to perform the work to the satisfaction of the NRCS. To the extent she argues that Mr. Williams should not be paid for work that did not pass the NRCS' inspection, as discussed above, we defer to the trial court's finding that Mr. Williams' payment was not contingent on the NRCS' approval of his work and/or the NRCS' payment to Mr. and Mrs. Sikes for such work. If Mrs. Sikes argues that Mr. Williams failed to complete the project, such fact is undisputed, and she provides no argument as to why this fact should prevent Mr. Williams from collecting payment for the work he did complete.

Briefly, the record shows that the trial court did not err in its calculation of the judgment it entered in favor of Mr. Williams. Taking the contract price of $92,000.00,[5] the trial court subtracted the $40,910.27 Mr. and Mrs. Sikes previously paid Mr. Williams, leaving a balance owed of $51,089.73. The trial court then subtracted an additional $17,800.00, representing the amount Mr. Bennett was paid to finish the project after Mr. Williams left it, resulting in a balance of $33,289.73. This calculation is supported by the record. Mr. Sikes testified that Mr. Bennett completed the project. Mrs. Sikes' and Mr. Bennett's testimonies support the amount Mr. Bennett was paid. Lastly, the trial court added $5,000.00 to account for the additional work Mr. Williams performed outside of the NRCS' restoration plan. This figure is supported by Mr. Sikes' testimony. Accordingly, we conclude that the trial court did not err when it entered a judgment in favor of Mr. Williams against Mr. Sikes for $38,289.73.

### D. Appellee's Issues

Mr. Williams lists two issues for our review. First, whether this Court should grant post-judgment interest, and second, whether this Court should grant him appellate attorney's fees. Mr. Williams provides no argument for either issue and merely asks for such relief in his conclusion. An award for post-judgment interest is statutorily mandated, *see* Tenn. Code Ann. § 47-14-122, and the trial court awarded it in the final judgment. At the appellate level, "if a judgment for money in a civil case is affirmed . . . whatever interest is allowed by law shall be payable computed from the date of the verdict of the jury or the equivalent determination by the court in a non-jury case, which date shall be set forth in the judgment entered in the trial court." Tenn. R. App. P. 41. Given that we have affirmed the trial court's judgment in favor of Mr. Williams, he is also entitled to post-judgment

---

[5] Although Mr. Williams argued at trial that he was owed more than $92,000.00, he does not appeal the trial court's conclusion that this was the parties' contracted price for his services.

interest on same.  As to Mr. Williams' request for appellate attorney's fees, "[w]hen a request for appellate attorney's fees does not seek relief from the judgment below, an appellee is not required to include the request in the statement of issues[, b]ut an appellee is required to present the request to the appellate court by raising it in the body of the brief, adequately developing the argument, and specifying that relief in the brief's conclusion." *Charles v. McQueen*, 693 S.W.3d 262, 284 (Tenn. 2024) (citing Tenn. R. App. P. 27(a)(7)(A), (a)(8), (b)).  Due to Mr. Williams' failure to adequately present his request for attorney's fees, he has waived this issue.

## V. Conclusion

For the foregoing reasons, the trial court's order is affirmed.  The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this Opinion, including the entry of an award of post-judgment interest.  Costs of the appeal are assessed one-half to the Appellant, Lee Ann Sikes, and one-half to the Appellee, Timothy Williams.  Execution for costs may issue if necessary.

s/ Valerie L. Smith
VALERIE L. SMITH, JUDGE

- 10 -