NEW HAVEN TOBACCO COMPANY *v.*
FRANK P. PERRELLI
(4987)

HULL, SPALLONE and BIELUCH, Js.

Submitted on briefs March 11—decision released July 28, 1987

*Randall B. Chapnick* filed a brief for the appellant (plaintiff).

*Paul M. Sabetta* filed a brief for the appellee (defendant).

SPALLONE, J. The plaintiff is appealing from the judgment of the trial court invalidating a restrictive covenant contained in an employment contract signed by the plaintiff and the defendant. We find error.

On December 11, 1980, the plaintiff employer and the defendant, then an employee of the plaintiff, entered into an employment contract that contained the following covenant: "Because of the importance and value

of the information disclosed to the Employee, as part of the consideration for his employment, the Employee agrees that he will not directly or indirectly sell products similar to those of the Employer to any of the customers that he has dealt with or has discovered and become aware of while in the employ of the Employer for a period of twenty-four months from the termination of his employment."[1] The defendant remained in the employ of the plaintiff until November 6, 1981, when he voluntarily terminated the employment relationship. Shortly thereafter, the defendant opened his own wholesale tobacco business and did, in fact, sell "products similar to those of the Employer" to customers of the plaintiff during the twenty-four month period covered by the restrictive covenant.

The plaintiff subsequently brought an action against the defendant seeking money damages and, as later amended, injunctive relief. After a hearing, the court, *Hadden, J.,* denied the plaintiff's application for a temporary injunction, holding that the restrictive covenant "does unduly interfere with the public interest and is unenforceable." That decision was appealed to the Supreme Court, which dismissed the appeal suo motu, finding that an appeal taken from the denial of a temporary injunction is not taken from a final judgment.

The case was remanded to the trial court and, after a trial, the court, *Reynolds, J.,* found for the defend-

---

[1] It should be noted at the outset that the covenant at issue here is not a run-of-the-mill anticompetitive covenant. The majority of such covenants are drafted to prevent an employee from competing with his former employer in the same geographical area (i.e., where they would be vying for the same pool of potential customers), or to prevent an employee from soliciting and "stealing away" customers from the former employer. This covenant, however, prohibits the defendant, as an ex-employee of the plaintiff, from entering into any business dealings with customers whom the defendant knows once dealt with the plaintiff. This would be true whether or not the customers unilaterally and voluntarily chose to transfer their business to the defendant.

ant. The court explicitly adopted the reasoning contained in the earlier memorandum of decision by Judge Hadden, finding that the covenant unduly interfered with the public interest. The plaintiff has appealed from that judgment, claiming that the trial court erred as a matter of law in holding that the covenant was unenforceable solely on the ground that the covenant interfered with the public interest.

Anticompetitive or restrictive covenants are frequently found in two distinct classes of contracts: those between a vendor and a vendee when the goodwill of the subject business is being purchased; and those between an employer and an employee when an employer is trying to protect his trade secrets, customer lists or "territory." Although the latter is not afforded the same degree of indulgence as is the former; *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248, 253, 108 A. 541 (1919); a restrictive covenant in an employment contract need only be reasonable. "Under the common law, the well-settled rule is that an anticompetitive covenant ancillary to a lawful contract is enforceable if the restraint upon trade is reasonable." *Elida, Inc.* v. *Harmor Realty Corporation,* 177 Conn. 218, 225, 413 A.2d 1226 (1979); *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 137, 368 A.2d 111 (1976); *Domurat* v. *Mazzaccoli,* 138 Conn. 327, 330, 84 A.2d 271 (1951); *Mattis* v. *Lally,* 138 Conn. 51, 54, 82 A.2d 155 (1951); *Dick* v. *Sears-Roebuck & Co.,* 115 Conn. 122, 126, 160 A. 432 (1932).

Our Supreme Court has specified five areas in which the reasonability of a restrictive covenant must be evaluated: (1) the length of time the restriction is to be in effect; (2) the geographical area covered by the restriction; (3) the degree of protection afforded to the interest of the party in whose favor the covenant is made; (4) the restrictions imposed on the employee's ability to pursue his occupation; and (5) the potential

for undue interference with the interests of the public. *Scott* v. *General Iron & Welding Co.,* supra.

In the present case, the trial court invalidated the covenant on the basis of the fifth category, finding that the covenant interfered with the public interest.[2] The court reasoned that, unlike a covenant prohibiting solicitation, a covenant which prohibits sales to an employer's former customers not only limits the employee's activities, but also restricts the public's freedom to choose with whom they will transact business. The court concluded that this restriction on the public's right to a free and open marketplace rendered the covenant unenforceable.

We agree with the trial court that the burden inflicted on the public interest by the use of an "antisales" clause is greater than the one imposed by an "antisolicitation" clause. In evaluating the validity of either of these restrictive covenants, however, the determinant is not whether the public's freedom to trade has been restricted in *any* sense, but rather whether that freedom has been restricted unreasonably. *Roessler* v. *Burwell,* 119 Conn. 289, 294, 176 A. 126 (1934).[3] Because the trial court

---

[2] The plaintiff argues that the trial court committed reversible error in its determination that a finding of an undue interference with the public interest, standing alone, could operate to invalidate the covenant, without reference to the four remaining categories. We disagree. The five-prong test enunciated above should be viewed as disjunctive rather than conjunctive. A finding of unreasonability in any one of the factors will be enough to hold the covenant unenforceable. See, e.g., *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248, 255–56, 108 A. 541 (1919) (finding covenant unreasonable due to overly broad geographical restriction); *Timenterial, Inc.* v. *Dagata,* 29 Conn. Sup. 180, 277 A.2d 512 (1971) (although time restriction found reasonable, geographical area was not).

[3] That some degree of interference with the public's rights to an accessible marketplace and a multifarious workforce is allowed can be clearly seen from the precedents in this area. In *May* v. *Young,* 125 Conn. 1, 2 A.2d 385 (1938), for example, the employee was prohibited, for a period of two years after leaving the plaintiff's employ, from entering into the employ of any of the plaintiff's clients. The court refused to invalidate this cove-

in this case invalidated the covenant on the ground that it restricted the public interest, without determining whether that restriction was reasonable, we must remand this matter for further findings by the trial court.

On remand, the trial court should evaluate the restrictive covenant under the five criteria set forth in *Scott* v. *General Iron & Welding Co.,* supra. Because it is likely that the issue of whether the covenant unduly affects the public interest will arise again on remand, we offer the following remarks to clarify the scope of this requirement.

There are three factors which we consider important in determining the reasonableness of a covenant that

nant on grounds of public policy, acknowledging that the restriction "le[ft] open to the defendant all other opportunities for employment." Id., 5. Similarly, in *Torrington Creamery, Inc.* v. *Davenport,* 126 Conn. 515, 12 A.2d 780 (1940), an employment contract clause was enforced which forbade the defendant from engaging in the same business as the plaintiff, whether as an employee, partner, manager, or otherwise, for two years after the termination of the defendant's employment with the plaintiff. The court held that it was bound by the decision in *May* v. *Young,* supra, and noted that there was "nothing in the finding to indicate that the interest of the public will be prejudiced by [the covenant's] enforcement." *Torrington Creamery, Inc.* v. *Davenport,* supra, 520. Finally, in *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 368 A.2d 111 (1976), the employee had agreed not to participate in the ownership or management of, or become associated with, any business similar to the type of business conducted by the employer. This prohibition was to be in force for five years and precluded the defendant from engaging in the prohibited behavior anywhere in the state. In the former employee's action for a declaratory judgment, the trial court held the agreement enforceable and this result was upheld on appeal. Id., 141. In each of these cases, the court upheld covenants that deprived *all* potential customers of the services of the former employee for the prescribed period. Furthermore, it is instructive to note that none of these cases make mention of the rights of third parties. Each of the employees in *May, Torrington Creamery* and *Scott* were restrained from accepting subsequent employment from third parties, yet the court never discussed the right of those potential employers to employ whomever they wished. Clearly, the public does not have an inherent right to do business with whomever it chooses when the individual of its choice has contracted away his ability to do business with the public.

is alleged to violate the public interest:[4] (1) the scope and severity of the covenant's effect on the public interest; (2) the probability of the restriction creating or maintaining an unfair monopoly in the area of trade; and (3) the interest sought to be protected by the employer. First, the restrictions contained in the covenant must be examined to determine how large a section of the populace will be affected if the covenant is enforced. For example, a typical anticompetition covenant which restricts an employee from engaging in the same business as his employer in a given geographical area, effectively prohibits all consumers of that service, who are located in that area, from transacting business with the employee. If the covenant imposes an antisolicitation or antisales restriction, however, the infringement of the public's right only affects a limited number of individuals, namely, the former customers of the employer. After the scope of the limitations has thus been considered, the severity of the covenant must be evaluated in terms of both the length of the limitation and the geographical area it covers. Again, both must be reasonable.

Second, in order to protect the interests of the general public, it must be determined if the covenant at issue would tend to create or maintain a monopoly in favor of the employer in the specific area of trade being restricted. Although this factor has not been used in

---

[4] Some of the factors which were considered independently in the application of the first four prongs of the reasonability test again arise in the balancing required in the fifth prong, albeit in a slightly different manner. For example, even if the court has found that the employer does possess an identifiable interest which is reasonably protected by the covenant, thereby successfully meeting the test's third prong, this interest is then considered in light of, and weighed against, the corresponding interference with the public interest. Similarly, after a determination has been made that the restrictive covenant is reasonable in both the time and geographical limitations imposed on the employee, these same limitations must be found to be reasonable restrictions on those members of the public affected by the covenant's prohibitions.

Connecticut to invalidate a restrictive covenant, it has been cited as a factor in other jurisdictions, and we deem it worthy of consideration. See, e.g., *Cogley Clinic Inc.* v. *Martini,* 253 Iowa 541, 549–50, 112 N.W.2d 678 (1962); *Johnson* v. *Stumbo,* 277 Ky. 301, 311, 126 S.W.2d 165 (1938); *Wells* v. *Wells,* 9 Mass. App. 321, 325, 400 N.E.2d 1317 (1980). Thus, in the present case, the trial court should determine whether the plaintiff was trying to create or maintain a monopoly in the wholesale tobacco business.

Third, the interest the employer seeks to protect must be weighed against the interest of the general public in an open marketplace. Although it is not an unreasonable restraint of trade for an employer to protect his stock of customers and their goodwill against appropriation by a former employee,[5] this right may not be exercised in such a way as to overly burden the ability of consumers to obtain needed services. Thus, it must first be determined that the employer is protecting a legally recognized interest, and then that the means chosen to achieve this end do not unreasonably deprive the public of essential goods and services. When faced with this question, other jurisdictions have approached the issue similarly. See, e.g., *Hebb* v. *Stump, Harvey & Cook, Inc.,* 25 Md. App. 478, 334 A.2d 563 (1975) (covenant prohibiting insurance agent from writing renewal business of former employer's customers upheld); *Mills* v. *Murray,* 472 S.W.2d 6 (Mo. App. 1971) (covenant

---

[5] Where the good will of the employer's customers has been generated by the efforts expended by the employer, such as the investment of his time and money, that good will is appropriately attributed to the employer rather than to the employee. The employer acquires, therefore, a proprietary right to his customers which he may protect for a reasonable time. *May* v. *Young,* 125 Conn. 1, 7, 2 A.2d 385 (1938). "[The employer] too is engaged in the struggle for prosperity and must bend every effort to gain and to retain the good will of his customers. It is the function of the law to maintain a reasonable balance, and this requires us to recognize that there is such a thing as unfair competition by an ex-employee . . . ." 6A A. Corbin, Contracts § 1394, p. 89.

forbidding management consultant to solicit or service former clients not unreasonable); *Bates Chevrolet Corp.* v. *Haven Chevrolet, Inc.,* 13 App. Div. 2d 27, 213 N.Y.S.2d 577 (1961) (covenant preventing automobile salesman from soliciting or accepting business from any of former employer's customers for period of five years is enforceable); see also 6A A. Corbin, Contracts § 1394, pp. 89, 98; 2 Restatement (Second), Contracts § 188, comment g.

The final consideration which must be taken into account is the public interest in requiring those who have freely entered into an agreement, and who have received a benefit for doing so, to abide by the terms of the agreement. " 'The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the "general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Twin City Pipe Line Co.* v. *Harding Glass Co.,* 283 U.S. 353, 356–357, 51 S. Ct. 476, 75 L. Ed. 1112 [1931]; 17 Am. Jur. 2d, Contracts, § 174.' *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 376–77, 321 A.2d 444 (1973)." *Williams* v. *Vista Vestra, Inc.,* 178 Conn. 323, 328–29, 422 A.2d 274 (1979).

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.