[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs Timothy J. Riordan and Barbara Combs (the plaintiffs) and the defendant John A. Barbosa, Jr. were partners in Greenhaus, Riordan Co. (the partnership), a partnership engaged in the business of public accounting and auditing. In September, 1993, the plaintiffs and the defendant executed a written partnership agreement which contained the following provision: "the retired or disabled or otherwise terminated partner covenants that, for five (5) years after the date of his or her withdrawal, he or she shall not directly or indirectly in any manner whatsoever solicit or service any then existing clients of the partnership which the withdrawing partner does hereby acknowledge is the business property of the partnership and an asset of the partnership. . . In the event that the retired, disabled or otherwise terminated partner shall break this restrictive covenant, then the withdrawing partner agrees to compensate the partnership within 30 days of the breach as and for liquidated damages, a sum equivalent to two times the annual gross fee(s) billed to the client by Greenhaus, Riordan Co. for the twelve (12) months prior to the breach."
The defendant voluntarily withdrew from the partnership as of December 31, 1996 and thereafter provided professional tax or accounting services to at least 88 clients of the partnership.
The plaintiffs brought this action against the defendant for damages arising out the defendant's breach of the covenant not to compete and now move for summary judgment. "Practice Book § [17-49] (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most CT Page 13278 favorable to the nonmoving party. . ." (Internal quotation marks omitted.) Water Way Properties v. Colt's Mfg. Co.,230 Conn. 660, 664-65, 626 A.2d 143 (1994).
"There are five criteria by which the reasonableness of a restrictive covenant must be evaluated: (1) the length of time the restriction is to be in effect; (2) the geographic area covered by the restriction; (3) the degree of protection afforded to the party in whose favor the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and (5) the extent of interference with the public's interests."New Haven Tobacco Co. v. Perrelli, 18 Conn. App. 531, 533,559 A.2d 715 (1989), citing Scott v. General Iron Welding Co.,171 Conn. 132, 137-138, 368 A.2d 111 (1976).[1] "The five prong test of Scott is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." New Haven Tobacco Co. v.Perrelli, supra.
The plaintiffs have satisfied their burden as to the first four criteria of this test. The focal point of the defendant's opposition to the plaintiffs' motion, however, is the fifth factor, "the extent of interference with the public's interests."New Haven Tobacco Co. v. Perrelli, supra, 18 Conn. App. 533.
"There are three factors which . . . [are] important in determining the reasonableness of a covenant that is alleged to violate the public interest: (1) the scope and severity of the covenant's effect on the public interest; (2) the probability of the restriction creating or maintaining an unfair monopoly in the area of trade; and (3) the interest sought to be protected by the employer. First, the restrictions contained in the covenant must be examined to determine how large a section of the populace will be affected if the covenant is enforced. For example, a typical anti-competition covenant which restricts an employee from engaging in the same business as his employer in a given geographical area, effectively prohibits all consumers of that service, who are located in that area, from transacting business with the employee. If the covenant imposes an anti-solicitation or anti-sales restriction, however, the infringement of the public's right only affects a limited number of individuals, namely, the former customers of the employer. After the scope of the limitations has thus been considered, the severity of the covenant must be evaluated in terms of both the length of the limitation and the geographical area it covers. Again, both must CT Page 13279 be reasonable.
"Second, in order to protect the interests of the general public, it must be determined if the covenant at issue would tend to create or maintain a monopoly in favor of the employer in the specific area of trade being restricted. . . Thus, in the present case the trial court should determine whether the plaintiff was trying to create or maintain a monopoly. . .
"Third, the interest the employer seeks to protect must be weighed against the interest of the general public in an open marketplace. Although it is not an unreasonable restraint of trade for an employer to protect his stock of customers and their goodwill against appropriation by a former employee, this right may not be exercised in such a way as to overly burden the ability of consumers to obtain needed services. Thus, it must first be determined that the employer is protecting a legally recognized interest, and then that the means chosen to achieve this end do not unreasonably deprive the public of essential goods and services. . ."
"The final consideration which must be taken into account is the public interest in requiring those who have freely entered into an agreement, and who have received a benefit for doing so, to abide by the terms of the agreement. The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. . ." (Footnotes omitted; internal quotation marks omitted.) New Haven Tobacco Co. v.Perrelli, 11 Conn. App. 636, 640-643, 528 A.2d 865 (1987).
The plaintiffs have not attempted to assume their burden of proof with respect to these criteria. Although the plaintiffs need not present a full blown antitrust defense in its moving papers, they must "show initially the absence of any genuine issue of material fact" as to the elements of their case. Adickesv. S. H. Kress Co., 398 U.S. 144, 159 (1970); but see CelotexCorp. v. Catrett, 477 U.S. 317, 325 (1986) (party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof). CT Page 13280
The plaintiffs argue that, "[a]s the most cursory examination of the telephone yellow pages would demonstrate, there is no plausible possibility of the plaintiffs or anyone else securing a monopoly position in the provision of professional accounting, tax or auditing services whether or not the restrictive covenant involved in his case is enforced." While Greenhaus, Riordan Co. may not be Price, Waterhouse Co., settled principles of summary judgment, do not permit the plaintiffs to call on the court to have its "fingers do the walking." Rather the plaintiffs must "show that there is no genuine issue of material fact"; Practice Book § 17-50; using "such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath." Practice Book § 17-45.
For example, what is the nature and size of the plaintiffs clientele? What other accounting firms operate in the market area, and what is the nature and size of their clientele? What is the plaintiffs' approximate market share in the relevant market area? Does the defendant possess particular expertise that would be difficult to replace in the market area?[2] An allusion to the yellow pages is not a substitute for such a showing. Cf.Cherniske v. Jajer, 171 Conn. 372, 370 A.2d 981 (1976). For this reason, the motion for summary judgment is denied.
BY THE COURT
Bruce L. LevinJudge of the Superior Court