[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Timothy J. Riordan and Barbara Combs (the plaintiffs), and the defendant, John A. Barbosa, Jr., were partners in Greenhaus, Riordan Co. (the partnership), a partnership engaged in the business of public accounting and auditing. In September of 1993, the plaintiffs and the defendant executed a written partnership agreement which contained the CT Page 2702 following provision: "The retired or disabled or otherwise terminated partner covenants that, for five (5) years after the date of his or her withdrawal, he or she shall not directly or indirectly in any manner whatsoever solicit or service any then existing clients of the partnership which the withdrawing partner does hereby acknowledge is the business property of the partnership and an asset of the partnership. . . . In the event that the retired, disabled or otherwise terminated partner shall break this restrictive covenant, then the withdrawing partner agrees to compensate the partnership within 30 days of the breach as and for liquidated damages, a sum equivalent to two times the annual gross fee(s) billed to the client by Greenhaus, Riordan Co. for the twelve (12) months prior to the breach.
The defendant voluntarily withdrew from the partnership as of December 31, 1996. Thereafter, he provided professional tax or accounting services to at least 85 clients of the partnership.
The plaintiffs filed an eight count, fifth amended complaint on February 18, 1998. In counts one through four, the plaintiffs allege damages arising out of a breach of the partnership agreement by the defendant, John A. Barbosa, Jr. Specifically, the plaintiffs allege breach of the agreement provision forbidding competition (count one); breach of fiduciary duty (count two); conversion (count three); and breach of the debit balance provision (count four). In counts five through eight, the plaintiffs bring claims against the defendants, McRedmond Company, P.C. and Eugene McRedmond, as fraudulent transferees.
The defendant filed an amended answer and special defenses in which he asserts that the restrictive covenant provision of the partnership agreement is overly broad and unreasonable. The plaintiffs have filed a motion for summary judgment with respect to liability only, as to count one of their fifth amended complaint.
 I
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that-there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "`In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.' (Internal quotation marks CT Page 2703 omitted.) Barrett v. Danbury Hospital, 232 Conn. 242, 250,654 A.2d 748 (1995)." Elliott v. Waterbury, 245 Conn. 385, 391,715 A.2d 27 (1998). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Home Ins. Co. v.Aetna Life and Casualty, 235 Conn. 185, 202, 663 A.2d 1001
(1995).
A motion for summary judgment on the complaint made by a plaintiff may be granted "in a proper case, notwithstanding the existence of a special defense as to which there is no genuine issue as to any material fact, where the plaintiff is entitled to judgment as a matter of law." Sand Dollar Development Group,L.L.C. v. Peter-Michael, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 104876 (March 12, 1998); see also Union Trust Co. v. Jackson, 42 Conn. App. 413, 417,679 A.2d 421 (1996); Fleet Bank, N.A. v. Galluzzo, 33 Conn. App. 662,664-66, 637 A.2d 803, cert. denied, 229 Conn. 910, 642 A.2d 1206
(1994).[1]
The plaintiffs move for summary judgment as to liability only on count one of their fifth amended complaint "on the grounds that there is no genuine issue of material fact that the defendant breached the parties' contract." In support of their motion, the plaintiffs submit the defendant's responses to their request for admissions and the affidavits of partners, Timothy J. Riordan and Barbara Combs. This evidence, taken together, reveals that the defendant provided tax, auditing and accounting services to persons who were clients of the partnership as of and prior to December 31, 1996, in direct violation of the partnership agreement.
The defendant does not deny that he entered into the partnership agreement, that he violated the restrictive covenant and that the plaintiffs are entitled to maintain this action to enforce the agreement. The defendant opposes summary judgment with its special defenses that the covenant restriction of the partnership agreement is overbroad, unreasonable and unenforceable.
The plaintiffs have met their burden as movants on summary judgment of establishing that there is no genuine issue of fact CT Page 2704 as to the material elements of their claim and that they are entitled to judgment as a matter of law. What remains is consideration of the defendant's special defenses. "[A] single valid defense may defeat recovery [on summary judgment]." UnionTrust Co. v. Jackson, supra, 42 Conn. App. 417.
 II
The defendant opposes the motion for summary judgment first by challenging the reasonableness of the covenant not to compete. Whether such a covenant "is reasonable or unreasonable is a question of law for the court. Cf. Robert S. Weiss Associates,Inc. v. Wiederlight, 208 Conn. 525, 530, 546 A.2d 216 (1988) (reasonableness of covenant not to compete); Scott v. GeneralIron Welding Co., 171 Conn. 132, 137-38, 368 A.2d 111 (1976) (same)." Hare v. McClellan, 234 Conn. 581, 589, 662 A.2d 1242
(1995).
 A
Preliminarily, it is necessary to address the question of which party has the burden of proof on summary judgment, with respect to the reasonableness of the restrictive covenant.
In Scott v. General Iron Welding Co., supra, 171 Conn. 132, the plaintiff brought a declaratory action to determine the validity of a restrictive covenant in an employment contract between himself and his former employer. Id., 134. The trial court rendered judgment for the defendant employer and the plaintiff appealed. On appeal, the plaintiff argued that "the trial court erred in requiring him to bear the burden of proof of his claim that the restriction was unreasonable as to area." Id., 139. The Supreme Court disagreed: "It is the well-established rule that [t]he mere fact that a party sees fit to institute an action for a declaratory judgment in no way operates to alter or shift the ordinary rules as to the burden of proof by choosing the procedure of such an action. . . . Therefore, we find that the trial court did not err in requiring the plaintiff to bear the burden of proof." (Citations omitted; internal quotation marks omitted.) Id. The party raising the covenant's reasonableness therefore carries the burden of proving his claim. Since it is the defendant who is challenging the reasonableness of the non-competition covenant, it would be his burden at trial to prove the unreasonableness of that provision. Id.; Mattis v.Lally, 138 Conn. 51, 55, 82 A.2d 155 (1951); Milaneseo v.CT Page 2705Calvanese, 92 Conn. 641, 642, 103 A. 841 (1918). For this reason it is also his burden on summary judgment. Celotex Corp. v.Catrett, 477 U.S. 317, 323-35, 106 S.Ct. 2548, 91 L.Ed.2d 265
(1986); F.D.I.C. v. Giammettei, 34 F.3d 51, 54-55 (2d Cir. 1994);Cray Communications, Inc. v. National Computer Systems, Inc.,33 F.3d 390, 393-94 (4th Cir. 1994), cert. denied, 513 U.S. 1191,115 S.Ct. 1254, 131 L.Ed.2d 135; In re Agricultural Research Technology Group, 916 F.2d 528, 533 (9th Cir 1990);, MercantileBank of Kansas City v. United States, 856 F. Sup. 549, 562
(D. Del. 1993); State of Arizona v. Motorola, Inc., 774 F. Sup. 566,570 (D. Ariz. 1991); In re Dept. of Energy Stripper WellExemption, 880 F. Sup. 1466, 1472 (D. Kan. 1990), rev'd in part on other grounds, 90 F.3d 1551 (Fed. Cir. 1996).[2]
 B
"There are five criteria by which the reasonableness of a restrictive covenant must be evaluated: (1) the length of time the restriction is to be in effect; (2) the geographic area covered by the restriction; (3) the degree of protection afforded to the party 7 in whose favor the covenant is made; (4) the restrictions on the employee's ability to pursue his occupation; and (5) the extent of interference with the public's interests."New Haven Tobacco Co. v. Perrelli, 18 Conn. App. 531, 533-34,559 A.2d 715, cert. denied, 212 Conn. 809, 564 A.2d 1073 (1989) (Perrelli II), citing Scott v. General Iron Welding Co., supra,171 Conn. 137-38.[3] "The five prong test of Scott is disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." Perrelli II, supra,18 Conn. App. 534.[4]
 1. Degree of Protection Afforded to the Plaintiffs
The defendant asserts that the degree of protection afforded to the plaintiffs by the covenant not to compete is excessive because of its scope. The defendant places singular reliance onLeon M. Reimer Co., P.C. v. Cipolla, 929 F. Sup. 154 (S.D.N Y 1996), where the defendant, a certified public accountant, was employed for four years by the plaintiff, Leon M. Reimer Co., P.C. (Reimer), a certified public accounting firm. His employment agreement provided that if he "accept[ed] an engagement from a client" of the employer within two years of his departure from his employment, he would pay the employer 150% of the annual gross fees charged to such client by the employer CT Page 2706 during the last full year the client employed the employer. Id., 155-56. When the defendant left the employer he told certain of his clients that he was leaving and joining a new partnership. Subsequently, some of these clients retained the services of the new partnership. Id., 156.
The District Court found that the covenant was overly protective of the employer for two reasons: (1) the covenant "prohibit[ed] Cipolla from accepting an engagement from a Reimer client who voluntarily and without any prior solicitation by Cipolla contact[ed] him and [sought] to retain him"; id., 158; and (2) the covenant "prohibit[ed] Cipolla from working for entities with whom he had no contact while at Reimer." Id., 159. Thus, the covenant was unreasonable "considering the business sought to be protected." (Internal quotation marks omitted.) Id.
This court is not persuaded by Cipolla because it is not consistent with Connecticut case law. In Perrelli II, supra,18 Conn. App. 535 n. 2, the Appellate Court stated that because "the restrictive employment covenant at issue [was] an antisales covenant, rather than an antisolicitation covenant, [this did] not automatically render it unenforceable. Although . . . an antisales covenant, which prohibits an employee from transacting business with customers of the former employer, imposes a greater burden on the public interest than an antisolicitation covenant, which prohibits only the solicitation of such customers, an antisales covenant may be valid if it is reasonable with respect to the five criteria of Scott v. General Iron Welding Co., [supra, 171 Conn. 137-38]. New Haven Tobacco Co. v. Perrelli,11 Conn. App. 636, 639-40, 528 A.2d 865 (1987) [(Perrelli I)]. InMay v. Young, 125 Conn. 1, 2 A.2d 385 (1938), a restrictive covenant was held valid despite the fact that it prevented the employee from entering into the employ of any client of the former employer. Similarly, in Robert S. Weiss Associates, Inc.v. Wiederlight, [supra, 208 Conn. 525], the covenant that was held valid prohibited the employee from soliciting or selling to customers of the plaintiff employer." (Emphasis added.) PerrelliII, supra, 18 Conn. 535 n. 2. "As to scope, the restraint may reasonably cover actual clients or customers of an employer whose business with them would be subject to injury through the activities contracted against." May v. Young, supra, 125 Conn. 8.
The defendant and his partners each signed the same partnership agreement to establish Greenhaus, Riordan Co. The promises and covenants entered into were mutual and reciprocal. CT Page 2707 The defendant presumably received the benefit for which he bargained. Cf. Roessler v. Burwell, 119 Conn. 289, 293,176 A. 126 (1934). The defendant may do business anywhere and with anyone except those clients of the partnership with whom he had established a relationship; cf. id., 294-95; or to whose special needs he had access. Such knowledge or relationship is "a potential threat to the [plaintiffs'] business" against which the plaintiffs are entitled to protection for a reasonable time.Scott v. General Iron Welding Co., supra, 171 Conn. 140. Absent any other facts, and no others have been presented, the court cannot hold that the protection afforded to the plaintiff by the covenant not to compete is excessive because of its scope.[5]
Further, the court finds that Cipolla is distinguishable because the present defendant makes no claim nor submits any evidence that he had no prior contact with any of the eighty-five clients who ceased doing business with the partnership; nor was there evidence that any of the clients found their way to the defendant's office without prior solicitation by him. "`Law suits are not determined by a consideration of philosophy in the abstract, but by the application of legal principles to the facts of a particular case.'" Singh v. Singh, 213 Conn. 637, 654,569 A.2d 1112 (1990), quoting Lomas Nettleton Co. v. Waterbury,122 Conn. 228, 234, 188 A. 433 (1936).
The defendant argues that the covenant is unreasonable because it prohibits mere solicitation. The liquidated damages clause, the defendant argues, is triggered even if the departing partner's solicitation efforts prove unsuccessful.
"Solicitation" is defined as "to make petition to . . . to approach with a request or plea . . . to strongly urge." Webster's Ninth New Collegiate Dictionary (1991); see Bigelow Co.v. Waselik, 133 Conn. 304, 306, 50 A.2d 769 (1946). The propriety of anticompetition covenants proscribing "solicitation" is well established. "[T]he protection of an employer's interest in his customers through the use of similar covenants restricting an employee from entry into the employ of or selling to or soliciting an employer's customers, has been held reasonable with respect to both the degree of protection afforded an employer and the restriction placed on an employee's pursuit of his or her occupation. See Robert S. Weiss Associates, Inc. v.Weiderlight, supra, [208 Conn. 528]; May v. Young, supra, [125 Conn. 1]." Perrelli II, supra, 18 Conn. App. 538; see Perrelli I,
supra, 11 Conn. App. 637 n. 1 (most anticompetition covenants are CT Page 2708 antisolicitation covenants); Torrington Creamery, Inc. v.Davenport, 126 Conn. 515, 518, 12 A.2d 780 (1940); see alsoTuttle v. Riggs-Warfield-Roloson, Inc., 251 Md. 45, 49,246 A.2d 588, 589-90 (1967); Uniform Rental Division, Inc. v. Moreno,83 App.Div.2d 629, 629-30, 441 N.Y.S.2d 538 (1981), cited inRobert S. Weiss Associates, Inc. v. Wiederlight, supra,208 Conn. 531-32. The covenant against solicitation in the partnership agreement is not, therefore, unreasonable.
 2. Extent of Interference With the Public Interest
The defendant also claims that the non-competition agreement violates public policy. In Perrelli I, the court gave the fullest exposition to date of the public interest prong of the five-part Scott test. "There are three factors which we consider important in determining the reasonableness of a covenant that is alleged to violate the public interest: (1) the scope and severity of the covenant's effect on the public interest; (2) the probability of the restriction creating or maintaining an unfair monopoly in the area of trade; and (3) the interest sought to be protected by the employer." Perrelli I, supra, 11 Conn. App. 640-41.
"First, the restrictions contained in the covenant must be examined to determine how large a section of the populace will be affected if the covenant is enforced. For example, a typical anticompetition covenant which restricts an employee from engaging in the same business as his employer in a given geographical area, effectively prohibits all consumers of that service, who are located in that area, from transacting business with the employee. If the covenant imposes an antisolicitation or antisales restriction, however, the infringement of the public's right only affects a limited number of individuals, namely, the former customers of the employer. After the scope of the limitations has thus been considered, the severity of the covenant must be evaluated in terms of both the length of the limitation and the geographical area it covers. Again, both must be reasonable." Id., 641.
The plaintiffs have submitted affidavits showing that, in violation of the covenant, the defendant rendered services to eighty-five persons who had been clients of the partnership. In addition, the defendant has submitted affidavits from four clients, each of whom states that he has engaged the defendant for accounting and tax preparation services since 1988 and, in the course of obtaining those services, has disclosed CT Page 2709 confidential information to him. In late 1996 or early 1997, these clients determined to again retain the defendant to render the same services "because of the trusting relationship [they] developed with Mr. Barbosa, and in light of the confidential information" each client must disclose to him. These clients do not desire to retain another accountant nor do they desire to disclose confidential information to the plaintiffs or the partnership. In addition, there was evidence that three other clients of the partnership opted to continue using the defendant's services after he left the partnership.
While eighty-five people is not an insignificant number, it certainly does not reflect that a large section of the populace is affected by this anticompetition restriction.
The defendant underscores that the relationship between an accountant and his client is one of trust and confidence. In recognition of this reality, Congress, in 1998, extended the common law attorney-client privilege to communications between a "federally authorized tax practitioner" and his client-taxpayer.26 U.S.C. § 7525.[6] The defendant is a federally authorized tax practitioner.[7]
"The public policy to be applied is the public policy of the present time." Samuel Stores, Inc. v. Abrams, 94 Conn. 248, 252,108 A. 541 (1919). That the relationship between accountants and their clients is often one of trust and confidence, as recognized by the recent federal legislation; cf. Faulkner v. UnitedTechnologies Corp. , 240 Conn. 576, 585-88, 693 A.2d 293 (1997) (state common law may be informed by public policy as expressed in federal legislation); is a pertinent consideration in the court's determination of whether the noncompetition clause violates public policy. See Holloway v. Faw, Casson Co.,319 Md. 324, 572 A.2d 510, 516-17 (1990).
That a person may be entitled to a trusting and confidential relationship, however, does not itself render noncompetition agreements among accountants in a partnership unreasonable. Seeid., 516-17. There is no per se distinction between so-called professional people and other members of the work force with respect to the reasonableness of a noncompetition covenant. "A profession partakes on its financial side of a commercial business, and its good will is often a valuable asset. It is true the profession has its personal side, but it is not true, except under exceptional circumstances, that a professional man is CT Page 2710 indispensable to any community." Styles v. Lyon, 87 Conn. 23, 28,86 A. 564 (1913). Notably, Connecticut has upheld such covenants against professionals such as physicians; id.; and dentists. Cookv. Johnson, 47 Conn. 175, 178 (1879).
Further, "[noncompetition] agreements are widespread in the accounting profession and, unlike the legal profession, the use of such agreements has not been specifically prohibited."Holloway v. Faw, Casson Co., 78 Md. App. 205, 552 A.2d 1311,1317, rev'd on other grounds, supra, 319 Md. 324; compare Rules of Professional Conduct 5.6(1) ("a lawyer shall not participate in offering or making [a] partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement").[8]
The second factor important to determining the reasonableness of a covenant alleged to violate the public interest is "the probability of the restriction creating or maintaining an unfair monopoly in the area of trade." Perrelli I, supra,11 Conn. App. 641. "[I]n order to protect the interests of the general public, it must be determined if the covenant at issue would tend to create or maintain a monopoly in favor of the employer in the specific area of trade being restricted." Id. Here there is no evidence that the plaintiffs or the partnership would create or maintain an unfair monopoly. No evidence has been produced as to how large a section of the populace, beyond the eighty-five people whom the defendant already has serviced, would be affected by the covenant.
Third, "the interest the employer seeks to protect must be weighed against the interest of the general public in an open marketplace." Id., 642. There is no question that the plaintiffs are seeking to protect a legally recognized interest. "An employer possesses a proprietary right to his customers that he is entitled to protect for a reasonable time. May v. Young, [supra, 125 Conn. 7]." Perrelli II, supra, 18 Conn. App. 536; seeRobert S. Weiss Associates, Inc. v. Wiederlight, supra,208 Conn. 533. "That some degree of interference with the public's rights to an accessible marketplace and a multifarious workforce is allowed can be clearly seen from the precedents in this area. . . . Clearly, the public does not have an inherent right to do business with whomever it chooses when the individual of its choice has contracted away his ability to do business with the public." Perrelli I, supra, 11 Conn. App. 639-40 n. 3. On this CT Page 2711 limited record, it cannot be said that the interests of the plaintiffs and the partnership are outweighed by the interest of the general public in an open marketplace.
"The final consideration which must be taken into account is the public interest in requiring those who have freely entered into an agreement, and who have received a benefit for doing so, to abide by the terms of the agreement. The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." (Internal quotation marks omitted.) Id., 643.
"Other jurisdictions have held that restrictive covenants in accountants' employment contracts are enforceable and not against public policy. See Perry v. Moran, 109 Wash.2d 691, 748 P.2d 224
(1987) [cert. denied, 492 U.S. 911, 109 S.Ct. 3228,106 L.Ed.2d 577 (1988)]; Wolf Co. v. Waldron, 51 Ill. App.3d 239,9 Ill. Dec. 346, 366 N.E.2d 603 (1977); Thompson, Breeding, et al. v.Bowlin, 765 S.W.2d 743 (Tenn.App. 1987); Ebbeskotte v. Tyler,127 Ind. App. 433, 142 N.E.2d 905 (1957); Enforceability ofCovenant Against Competition in Accountant's Employment Contract,
15 A.L.R.4th 559 (1982)." Schott v. Beussink, 950 S.W.2d 621,625 (Mo.App. 1997). No less respect is due a restrictive covenant in a partnership agreement when, as here, the covenant is essentially attacked on its face. See generally annot., supra, 13 A.L.R.4th 661.[9]
 III 
The defendant raises as his second special defense that the liquidated damages provision in the partnership agreement is an illegal penalty and not enforceable. "It is settled law that a contract provision which imposes a penalty for a breach of the contract is contrary to public policy and is invalid, but a contractual provision which fixes liquidated damages for a breach of the contract is enforceable if it satisfies certain conditions. Berger v. Shanahan, 142 Conn. 726, 731, 118 A.2d 311
[1955], and cases cited. The conditions which will justify an agreement for liquidated damages are: `(1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an CT Page 2712 intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract.' Id., 732." Norwalk DoorCloser Co. v. Eagle Lock Screw Co., 153 Conn. 681, 686,220 A.2d 263 (1966); see Hanson Development Co. v. East Great PlainsShopping Center, Inc., 195 Conn. 60, 64-65, 485 A.2d 1296 (1985).
If a contract is "construed as imposing a penalty, it would be unenforceable, but the plaintiff would be entitled to recover her actual damages. May v. Young, [supra, 125 Conn. 9]." Camp v.Cohn, 151 Conn. 623, 626, 201 A.2d 187 (1964). On a plaintiff's motion seeking summary judgment for breach of a contract containing an unenforceable liquidated damages provision, summary judgment may still be granted as to liability and a hearing held later on actual damages sustained. See Sanitary Services Corp. v.Greenfield Village Assn., Inc., 36 Conn. App. 395, 400-01,651 A.2d 269 (1994). Therefore, the defendant's claim that the liquidated damages clause is an illegal penalty is no defense to the motion for summary judgment as to liability only.
The defendant has not sustained his burden of proving the existence of a material fact as to the non-competition covenant's unreasonableness or lack of enforceability. The plaintiff's motion for summary judgment is granted.
BY THE COURT
Bruce L. LevineJudge of the Superior Court