[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, Elizabeth M. Stewart, brings this action in ten (10) CT Page 2505 counts, seeking money damages which she claims resulted from her discharge from employment by the defendant, Cendant Mobility Services Corporation (Cendant Mobility).
The plaintiff was employed by the defendant as vice president of international sales, prior to her termination on June 11, 1999.
Cendant Mobility is in the business of selling relocation services to large corporate clients.
Since 1988, Elizabeth M. Stewart was continually employed by either the defendant, Cendant Mobility, or by Coldwell Banker Relocation Management Services (Coldwell Banker).
In May of 1977, Coldwell Banker merged with Cendant Mobility, and the plaintiff became an employee of the defendant.
Elizabeth M. Stewart was first employed by Coldwell Banker in 1988, with the title of senior relocation counselor.
She was promoted to the position of director of sales in 1993, prior to the merger.
With the defendant, Cendant Mobility, she was employed as vice president of sales, before becoming vice president of international sales in 1999.
At the time of her termination, she earned compensation of approximately six hundred thousand ($600,000) dollars per year.
The plaintiffs husband, Gregory Stewart, was employed by the defendant, Cendant Mobility, as an executive vice president, before being terminated by Cendant Mobility in April of 1998.
Elizabeth M. Stewart claims that she discussed the subject of her husband becoming re-employed by a competitor in the relocation industry with officials of Cendant Mobility.
During a discussion with E. James Simon, the executive vice president of sales, Elizabeth M. Stewart claims that she received "strong assurances" that her employment with Cendant Mobility would not be affected, despite the prospect of her husband becoming associated with a competing concern.
According to the plaintiff, E. James Simon represented to her that Kevin Kellener, the president of Cendant Mobility, agreed that her CT Page 2506 employment was secure.
Elizabeth M. Stewart contends, based upon her conversation with Simon, that she refrained from exploring alternatives to her employment with Cendant Mobility.
During the spring of 1999, Cendant Mobility became aware that Gregory Stewart was attempting to reenter the relocation business, and had become associated with Electronic Data Services (EDS).
In March of 1999, EDS submitted a bid in competition with Cendant Mobility regarding an account with Citibank.
A series of meetings and correspondence ensued, concerning the role which Elizabeth M. Stewart should play as an employee of Cendant Mobility.
On April 1, a memo was sent by E. James Simon to the plaintiff, in which it was stated that a "conflict of interest is inevitable."
On April 30, 1999, in an attempt to reach an agreement with Elizabeth M. Stewart concerning her continued employment by Cendant Mobility, a letter was sent by William J. Maxwell, senior vice president for human resources.
The letter outlined a proposed two year employment agreement between Cendant and Elizabeth M. Stewart, but added that the plaintiff would "continue to be an employee at will."
The plaintiff refused to sign the April 30 letter, which she termed a "one sided contract."
Further correspondence and negotiations proved futile, and the plaintiff was terminated from employment in June, 1999.
This action followed.
The defendant, Cendant Mobility, moves for summary judgment as to each of the ten (10) counts contained in the plaintiffs complaint in a motion dated June 1, 2001.
The plaintiff, Elizabeth M. Stewart, has also filed a partial motion for summary judgment which will also be considered.
 STANDARD OF REVIEW
A trial court may appropriately enter summary judgment when documentary CT Page 2507 and other evidence demonstrates that no genuine issue of material fact exists, and that the party moving for summary judgment is entitled to judgment as a matter of law. Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 11 (1983); Daily v. New Britain Machine Co., 200 Conn. 562,568 (1986).
The moving party has the burden of showing what the truth is as to the existence of any genuine issue of material fact. Yanow v. TealIndustries, Inc., 178 Conn. 262. 268 (1979).
Connecticut Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
A material fact is defined as one which will make a difference in the result of the case. United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 379 (1969).
In deciding a motion for summary judgment, a trial court must view all evidence in the light most favorable to the nonmoving party. HomeInsurance Company v. Aetna Life Casualty Co., 235 Conn. 185, 202
(1995). The burden is on the moving party to show quite clearly what the law is, and that it excludes any real doubt as to the existence of any genuine issue of material fact. Fogarty v. Rashaw, 193 Conn. 442, 445
(1984).
The test to be applied is whether the party seeking summary judgment, if the case were tried to a jury, would be entitled to a directed verdict. United Oil Co. v. Urban Redevelopment Commission, supra,158 Conn. 380.
 COUNT ONE — BREACH OF CONTRACT
The plaintiff claims that based upon her conversation with E. James Simon, an oral contract was created binding upon Cendant Mobility.
She claims to have received strong assurances that her position with Cendant Mobility as vice president of international sales would not be negatively impacted by Gregory Stewart's competitive activities in the relocation industry.
E. James Simon, during the conversation, stated that the company president believed that the plaintiffs employment with Cendant Mobility CT Page 2508 was secure.
Elizabeth M. Stewart claims, as a result of the alleged agreement, that she refrained from seeking alternate employment in the relocation industry, and that her termination constituted a breach of the oral agreement.
She argues that her discharge by Cendant Mobility was the result of her husband' s competitive activities, and that she has suffered damages as a result of the breach.
To form a valid and binding contract, there must be a mutual understanding of the terms that are definite and certain between the parties to the agreement. Richter v. Danbury Hospital, 60 Conn. App. 280,288 (2000). In the context of an employment agreement, the plaintiff has the burden of proving that the defendant had agreed to undertake some form of contract commitment under which she could not be terminated without just cause. Coelho v. Posi-Seal International, Inc., 208 Conn. 106,112 (1988).
Absent definite contract language, what the parties intended to encompass in their contractual commitment is a question of fact. Lavignev. Lavigne, 3 Conn. App. 423, 428 (1985).
The plaintiff does not contend that a written contract of employment was ever consummated.
She seems to argue that the material terms of her at-will employment agreement relationship including salary, duration, and other terms, were incorporated by reference into the agreement allegedly entered into when the oral representations were made by E. James Simon.
The defendant insists that the statements uttered by Simon were merely vague assurances and were not intended to undertake or assume any contractual commitment.
Support for this belief is found in the series of memos and letters in 1999 between the plaintiff and various Cendant Mobility employees.
During the course of these written communications, the plaintiff did not dispute her status as an at-will employee, or the characterization of her employment by the defendant or its representatives.
Because the oral representations of E. James Simon were never reduced to writing, the plaintiffs conduct subsequent to the statement could be viewed as inconsistent with the existence of an employment contract. CT Page 2509
However, a question of fact exists as to the intention of the parties at the time of the oral representations, whether the alleged agreement was supported by consideration, and whether the plaintiff reasonably relied upon the statements.
Although the plaintiff can point to no specific job which was offered to her or which she failed to pursue as a result of the statement by E. James Simon, a genuine issue of fact exists as to whether she relied to her detriment upon the representations, and whether any damages were sustained.
There is also a question of fact, assuming the existence of an oral contract, concerning whether the plaintiffs termination was the result of Gregory Stewart's competitive activities.
Therefore, summary judgment as to count one is denied.
 COUNT TWO — GOOD FAITH AND FAIR DEALING
In order to prevail on her claim that the defendant breached its covenant of good faith and fair dealing, the plaintiff must first establish the existence of an implied contract.
While a covenant of good faith and fair dealing is contained in every contract, including employment contracts, it cannot be utilized as a vehicle to transform a contract of employment terminable at will, into one terminable only at the will of the employee, or for good cause.Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 569 (1984).
The plaintiff must, therefore, prove not only the existence of a contract, as alleged in count one, but that the defendant engaged in conduct which injured the plaintiffs right to receive the benefit of the contract.
She must also prove that the defendant acted in bad faith.
Because genuine issues of material fact exist as to the formation of the alleged agreement and whether the plaintiff sustained damages as a result of the breach, summary judgment is denied as to count two.
 COUNT THREE — PROMISSORY ESTOPPEL
Like her claims in counts one and two, the plaintiff seeks to recover CT Page 2510 in count three based upon the statements made to her by E. James Simon in 1998, following her husband's termination by Cendant Mobility.
Promissory estoppel is not available to a plaintiff in an at-will employment situation.
In order to prevail, the plaintiff must prove that the defendant, through words or conduct, agreed to undertake contractual commitments to her, pursuant to which she could not be discharged except for just cause. Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1,15 (1995); Pavliscak v. Bridgeport Hospital, 48 Conn. App. 580, 593
(1998).
As with any implied employment contract, there must be a clear and definite promise which a promiser could reasonably expect to induce reliance. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 213 (1987).
Furthermore, the party to whom the promise was made must, in fact, rely upon the promise, to her detriment.
Questions of fact are presented concerning whether a promise was made and, if so, whether it was of a clear and definite nature, sufficient to induce reasonable reliance.
Whether continuing her employment with Cendant Mobility represents sufficient reliance to invoke the doctrine of promissory estoppel represents a question of fact.
Therefore, the defendant's motion for summary judgment, as to count three, must be denied.
 COUNT FOUR — NEGLIGENT MISREPRESENTATION
In count four, the plaintiff claims that the statement made to her by E. James Simon, in 1998, was false and that she relied to her detriment upon that false representation.
She must, therefore, prove that Simon's "strong assurances" that her employment with Cendent Mobility would not be affected by her husband's potentially competing activities were false.
An innocent representation of fact may be actionable if the declarant has the means of knowing, ought to know, or has a duty of knowing the truth. Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575
CT Page 2511 (1995); Richard v. A. Waldman Sons, Inc., 155 Conn. 343, 346 (1967).
In order to recover for a negligent misrepresentation, the plaintiff must prove that false information was supplied by E. James Simon in the course of his business or employment that the information was supplied for the guidance of the plaintiff in her business relationships, that the plaintiff relied upon those statements to her detriment, and that her reliance was justifiable. Beverly Hills Concepts, Inc. v. Schatz andSchatz, Ribicoff Kotkin, 247 Conn. 48, 57 (1998).
The defendant claims that the statements were not false, and that they cannot form the basis of any contractual relationship.
Cendant Mobility further argues that the plaintiffs decision to remain employed at a substantial salary does not constitute detrimental reliance.
Sufficient questions of fact remain to require that the motion for summary judgment as to count four be denied.
 COUNT FIVE — DEFAMATION
Count five encompasses two specific instances during which the plaintiff, Elizabeth M. Stewart, claims that defamatory statements were uttered of and concerning her performance as an employee of Cendant Mobility.
Before a party will be held liable for defamation, there must be an unprivileged communication of a false and defamatory statement concerning the plaintiff Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 316
(1984).
Defamation is actionable per se, without proof of special damages, if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in her profession or business. Miles v. Perry,11 Conn. App. 584, 601 (1987).
The plaintiff was not present when any of the allegedly defamatory statements were uttered.
Presumably, she would seek to introduce testimony concerning the statements at the time of trial not for the purpose of proving that the statements are true, but merely to prove that the statements were, in fact, made.
Elizabeth M. Stewart claims that her integrity was called into question CT Page 2512 during a conference call on March 6, 1999, and that statements were made by Senior Vice President John Arcario which attacked her reputation.
Her second claim concerns Terry Hogan, a vice president of international client services.
The plaintiff alleges that Terry Hogan, at a sales meeting in April of 1999, said that the plaintiff was "wrong" not to bring forth information concerning Gregory Stewart's competing business activities.
It was also stated that Terry Hogan thought "highly" of the plaintiff, Elizabeth M. Stewart.
The defendant argues that to be actionable, a statement must convey an objective fact, and a defendant cannot be liable for expressing a mere opinion. Daley v. Aetna Life Casualty Co., 249 Conn. 766, 795 (1999);Perruccio v. Arseneault, 7 Conn. App. 389, 394 (1986).
Cendant Mobility contends that both statements fall into the opinion category and are not actionable.
Whether either or both of the alleged statements are defamatory constitutes a question of fact.
Summary judgment as to count five is denied.
 COUNT SIX — SELF-DEFAMATION
In count six, the plaintiff claims that she was compelled to repeat allegedly defamatory statements made by employees of Cendant Mobility to a third party.
This cause of action for "self defamation" requires that a defamatory statement be communicated to one other than the plaintiff, and that the plaintiff communicated the statement under compulsion.
No cause of action for self defamation has been recognized by the Connecticut Supreme Court or the Appellate Court.
Furthermore, in jurisdictions where the cause of action is recognized, a plaintiff must prove that the employer communicated a defamatory statement to the plaintiff. Churchey v. Aldoph Coors Co., 759 P.2d 1336
(Colo. 1988); McKinney v. County of Santa Clara, 110 Cal.App.3d 787,796, 168 Ca. Rptr. 87 (1980). CT Page 2513
Here, the plaintiff was under no obligation to speak in a legal proceeding or to answer questions under oath under penalty of perjury.
She was not compelled to disclose defamatory information and suffered no consequences for failure to disclose the information.
There is no liability to an employer for a plaintiff voluntarily repeating to third parties information believed by the plaintiff to be defamatory.
To allow recovery under these circumstances would allow a plaintiff to profit from, and compound the effect of, the very wrong against which she clamors;
The defendant's motion for summary judgment as to count six is granted.
 COUNT SEVEN — UNPAID WAGES, § 31-72 OF THE CONNECTICUT GENERAL STATUTES
The plaintiff claims that she is owed wages pursuant to § 31-72 of the Connecticut General Statutes.
Section 31-71a (3) defines wages as: "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."
The plaintiff claims that she is owed the difference between $80,000, which she says she was promised, and the $72,000 actually paid on an annual basis.
Although the plaintiff offers no direct written evidence that a salary of $80,000 per year was offered and the defendant claims that all outstanding commissions have been paid, questions of fact exist as to the amount of compensation due.
The motion for summary judgment as to count seven is denied.
 COUNT EIGHT — WRONGFUL DISCHARGE
In count eight, the plaintiff alleges a common law claim of wrongful discharge from employment.
She seems to suggest that even if her status was that of an at-will employee, she can maintain an action for wrongful discharge, because she CT Page 2514 was discharged in violation of an important concept of public policy.Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474 (1980);Faulkner v. United Technologies Corp., 240 Conn. 576, 580-81 (1997);Morris v. Hartford Courant Co., 200 Conn. 676, 679 (1986).
The public policy exception recognized by Connecticut courts is narrow, and courts will not intervene in employment at-will situations unless the termination violates an explicit statutory or constitutional provision or judicially conceived notion of public policy. Daley v. AetnaLife Casualty Co., supra, 249 Conn. 802-03; Antinerella v. Rioux,229 Conn. 479, 492 (1994).
The plaintiff claims that her discharge violated two important concepts of public policy.
First, she claims that her discharge violated the public policy against taking adverse action against an employee due to marital status.
Connecticut, by statute, prohibits discrimination against an employee due to his or her marital status.[1]
Here, assuming all facts most favorably to the plaintiff, Elizabeth M. Stewart, she was not discharged because of her status as a married woman, but because her husband was engaged in business activities which directly competed with Cendant Mobility.
It was not the fact that she was married that caused her discharge, but the occupation of the individual to whom she was mated.
The facts, as alleged, fail to implicate or allege any violation of an important public policy which would allow Elizabeth M. Stewart to avoid the consequences of an at-will employment relationship.
The plaintiff further claims that her refusal to sign a non-competition agreement when requested to do so, violates public policy.
Connecticut does not find non-competition agreements in violation of public policy. Such agreement can be enforced so long as the restraint on employment is reasonable. Scott v. General Iron Welding Co.,171 Conn. 132, 137 (1976).
While overly restrictive non-competition agreements are disfavored; NewHaven Tobacco Co. v. Perrelli, 11 Conn. App. 636, 638 (1987); the refusal to sign a non-competition agreement is not sufficient to permit an action by an at-will employee for wrongful termination. Simec v. G WManagement, Inc., 29 Conn.L.Rptr. No. 2, 40 (2000). CT Page 2515
To permit an at-will employee to circumvent the consequences of an at-will relationship in this way would promote litigation and serve to inhibit legitimate managerial and business decisions.
Since neither reason advanced by the plaintiff, Elizabeth M. Stewart, as important public policies is sufficient to remove the plaintiff from the category of an at-will employee, the motion for summary judgment as to count eight is granted.
 COUNTS NINE AND TEN — QUANTUM MERIUT AND UNJUST ENRICHMENT
In counts nine and ten, Elizabeth M. Stewart seeks to recover under the theories of quantum meruit and unjust enrichment.
Both of these equitable remedies, as the defendant points out, presuppose that no express contract has been entered into between the parties. Burns v. Koellmer, 11 Conn. App. 375, 383 (1987).
Both provide a means for recovery in the absence of a valid contract, express or implied. Gagne v. Vaccaro, 255 Conn. 390 (2001); Sidney v.DeVries, 215 Conn. 350, 351-52 n. 1 (1990).
A party to an express contract cannot assert claims for quantum meruit
and unjust enrichment.
The plaintiff states, in her memorandum in opposition to the motion for summary judgment, that she "has included the same unpaid amounts claimed in her unpaid wages count in her two equitable counts (p. 52)."
There is a question concerning whether the sales personnel compensation agreement provided by the defendant was in effect at all times during the plaintiffs employment with Cendant Mobility.
Although a claim for unpaid wages pursuant to an employment contract and claims for equitable remedies such as quantum meruit and unjust enrichment are mutually exclusive, they may be advanced in the alternative.
Therefore, the motion for summary judgment as to counts nine and ten is denied.
Plaintiff's Cross-Motion For Summary Judgment
The plaintiff has moved for cross summary judgment in connection with her CT Page 2516 claim that wages in the amount of $47,011.17 are owed by Cendant Mobility.
She moves for summary judgment as to a portion of counts seven, nine and ten.
Elizabeth M. Stewart claims that she is entitled to summary judgment on both the equitable theories as well as her claim for unpaid wages.
Recovery under counts nine and ten depends upon a finding by the trier of fact that no express contract between the parties existed.
The amount sought by way of summary judgment is a portion of the monies the plaintiff claims are due her.
The motion for cross summary judgment raises the issue of whether summary judgment can be granted as to some but not all claims raised in a single count.
The majority of courts which have considered the issue have held that the moving party cannot eliminate some allegations in a single count by resort to summary judgment. Cave v. Farm Family Mutual Insurance Co., Superior Court, judicial district of Waterbury, Docket No. 125978 (December 31, 1996, Vertefeuille, J.) (18 Conn.L.Rptr. 396); Jewett v.General Dynamics Corp., 1997 WL 255093 (Booth, J).
The court believes that summary judgment is not appropriate as to only a portion of a single count, and that a genuine issue of fact exists as to whether any monies are owed, and whether they may be subject to set off
The motion for cross summary judgment is denied.
 CONCLUSION
As to counts one, two, three, four, five, seven, nine and ten of the defendant's motion for summary judgment, the motion is denied.
The motion is granted as to counts six and eight.
The plaintiffs motion for partial summary judgment is denied.
 ___________________ Radcliffe